Cutler *v.* Dushoff et al., Appellants.

Argued December 17, 1959. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

re-argument refused April 11, 1960.

*Ronald N. Rutenberg,* with him *Harry A. Rutenberg,* for appellants.

*William J. McKinley, Jr.,* for appellees.

OPINION BY WATKINS, J., March 24, 1960:

This is an appeal from the judgment of the Court of Common Pleas No. 2 of Philadelphia County refusing defendants' motions for judgment n.o.v. and for a new trial in a trespass action for personal injuries sustained by the wife-plaintiff, Minnie Cutler, while on the property of defendants, David Dushoff and Daniel Gerson, individually and trading as New Latin Casino, the trial of which resulted in verdicts in favor of both plaintiffs.

The pertinent facts appear to be as follows: Mrs. Cutler, the wife-plaintiff, testified that on October 22, 1955, at approximately 12:30 p.m., she entered defendants' establishment, known as the Latin Casino, for the purpose of attending a party to which she had been invited.

After checking her hat and coat she descended a flight of steps to the basement level where defendants' restaurant is located. She inquired where her friend's party was taking place and was directed to proceed

down a well-carpeted aisle between rows of tables to the right. As she proceeded down the aisle she noticed a white strip and observed that it indicated a difference of level or step in the aisle which she traversed without difficulty. She then proceeded ten or fifteen feet farther down the aisle when her heel caught on a loose piece of metal molding or stripping, causing her to fall and suffer painful and serious injuries. At the time of the accident she was wearing low heel shoes and carrying, in addition to her pocketbook, a gift for the party which she planned to attend.

After the fall, plaintiff realized that she had tripped over a piece of metal raised approximately one-half inch from the floor level, which was used to secure a white vinyl pad located at a second step or difference in floor level in the aisle. She stated that prior to her fall she had not seen the second step or the metal stripping, and explained that the lighting conditions in this area were very dim.

A witness for the plaintiff, Mrs. Esther Wax, testified that on the day in question, October 22, 1955, she attended the same party given at the Latin Casino; that she arrived at approximately twelve o'clock noon, and that while she was proceeding down the same aisle, the heel of her shoe became engaged in an up-raised piece of metal in exactly the same location where plaintiff fell; that she too was caused to fall, but fortunately she suffered only minor injuries. She likewise testified that the lighting conditions in the area of the step on which she fell were very dim. On this occasion the witness testified that she observed that the metal strip used to secure the white vinyl step pad was raised approximately one-half inch above the remainder of the step or floor level. She admitted that she did not report her fall to the management.

There was testimony that the steps on which she fell is part of the main aisle which all the patrons enter-

ing or leaving the dining area of the establishment use. Waiters and other employees use the aisle constantly. On the day of the accident it was testified that approximately twenty employees were present in and about the area when the accident occurred.

There was conflicting testimony and the court below and this Court is bound to consider the testimony in the light most advantageous to the plaintiffs and resolve in their favor all doubts and conflicts therein. *Jemison v. Pfeifer,* 397 Pa. 81, 152 A. 2d 697 (1959).

Restatement of the Law, Torts §343, page 938: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

In comment "a" in the same Section of Restatement of the Law, page 939: "Distinction between possessor's duty to gratuitous licensee and duty to business visitor. There is only one particular in which one who holds his land open for the reception of business visitors is under a greater duty in respect to its physical condition than a possessor who holds his land open to the visits of a gratuitous licensee. The possessor has no financial interest in the entry of a gratuitous licensee; and, therefore, such a licensee is entitled to expect nothing more than an honest disclosure of the dangers

which are known to the possessor. On the other hand, the visit of a business visitor is or may be financially beneficial to the possessor. Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions. As stated in §342, a possessor owes to a bare licensee only the duty to exercise reasonable care to disclose to him dangerous defects which are known to him and are likely to be undiscovered by the licensee. Toward the business visitor, the possessor owes the additional duty to exercise reasonable care to make the land safe for the reception of his visitor or, at the least, to ascertain the actual condition of the land so that by warning the visitor thereon, he may give the visitor an opportunity to decide intelligently whether or not to accept the invitation or permission."

As restaurant club owners inviting the public to do business on their premises defendants owed plaintiff the affirmative duty to maintain his premises in a reasonably safe condition for the contemplated use thereof. They are subject to liability for bodily injuries suffered by business visitors on their premises if they knew, or by the exercise of reasonable care would determine the existence of a condition which they realize involves an unreasonable risk to the visitors. There being no proof of actual knowledge of the existence of the dangerous condition on the part of defendants here, the burden is on the plaintiff to show the defect had existed for a sufficient time to charge defendants with constructive notice. *Stais v. Sears-Roebuck and Co.*, 174 Pa. Superior Ct. 498, 102 A. 2d 204 (1954).

The exact area in question was on the main artery for traffic in the club. The testimony indicated that the aisle was traversed approximately 50,000 times a year. It was used by all employees to and from the kitchen, and in view of the number of employees pres-

ent, its location in the club, the showing that the dangerous condition existed for at least thirty minutes and considering all the other circumstances, the jury was justified in finding that the condition existed for a sufficient time to amount to constructive notice and negligence on the part of the defendants. *Kanner v. Best Markets, Inc.,* 188 Pa. Superior Ct. 366, 147 A. 2d 172 (1958); *Coxey v. Guala,* 112 Pa. Superior Ct. 460, 171 A. 484 (1934).

The question of plaintiff's contributory negligence under the circumstances was properly left for the jury's consideration. This beautifully furnished, heavily carpeted, intimate dining room would impart to its guests, the business invitees, for the profit of the defendants, a sense of safety and security and certainly when attending a party with friends, such a business invitee would have no idea or warning of danger as she proceeded in the carpeted aisle to join her party as directed by the defendants' employee. She proceeded in the direction indicated by defendants' employee into an area which was dimly lighted but not dark and for a proper and compelling reason. *Clewell v. Pummer,* 384 Pa. 515, 121 A. 2d 459 (1956).

Defendants contend that the lower court erred in not striking out all testimony regarding the raised metal strip causing wife-plaintiff to trip at the dimly lighted step, claiming this proof was at variance with the pleading in the complaint which was as follows:

"5. While lawfully on the premises, controlled and operated by the defendants, the plaintiff was going to her table and fell down an unlighted step in the center of the floor, with great force and violence and sustained serious and severe injuries, hereinafter more particularly set forth.

"7. The negligence of the defendants, their servants, agents or employees consisted of:

(a)  Maintaining a public Night Club in a darkened condition in which there is an unlighted and unprotected step.

(b)  Failing to post any signs or notices of the dangerous condition.

(c)  Failing to have any floor light, or other light to give notice of the dangerous condition.

(d)  Failing to warn patrons of the dangerous condition therein existing.

(e)  Maintaining a dangerous and unlawful condition.

(f)  Disregarding the rights and safety of persons in the said premises, and particularly the plaintiff herein.

(g)  Failing to exercise due care under the circumstances."

Defendants moved that the testimony be stricken, but did nothing further to guard their position until after an adverse verdict was given. See *Arner v. Sokol,* 373 Pa. 587, 96 A. 2d 854 (1953), at page 592: "The day of tight-rope walking in pleading when one slight misstep on the part of the attorney plunged his client's cause into the abyss of extinction is happily gone. 'It is the consistent policy of the courts to give full opportunity to parties to plead their cause of action, if they have one, and not turn them out of court for technical errors. That is especially true if the objections refer more to the manner of pleading than to a complete lack of a cause of action. If the pleading is vague or insufficient and it appears that a clear and adequate statement of facts can be averred, permission should be given to amend. It is always desirable to dispose of litigation on the merits, if possible. As was said in *Stevens v. Smith,* 310 Pa. 287, 288, 165 A. 237: "Under present day practice and procedure we will not foreclose a cause of action for defects resting more on form than want of substance." ' ". That the defendants

were not surprised is apparent from the evidence offered by them. *Penna. R. R. Co. v. Pittsburgh,* 335 Pa. 449, 6 A. 2d 907 (1939).

The third and fifth questions raised by defendants concern the admission of testimony by the lower court, some of which was not objected to at the trial, the testimony having been volunteered by defendant and elaborated upon through cross-examination as to changes made in the area here in question and the type of material now used on this step. The defendants also complain of the plaintiff's question on cross-examination as to whether people had tripped and fallen in the Latin Casino. The latter question having been asked in close connection with the discussion above regarding changes made in the material on the very step in question. In view of the lower court's careful charge to the jury we cannot see how this testimony, in any way, prejudiced the defendants to such an extent as to require the grant of a new trial. The trial court has wide discretion on the admissibility of evidence for any proper reason and in the absence of a great abuse of this discretion the decision of the lower court will not be disturbed. As we said in *Kanner v. Best Markets, Inc.,* supra, at page 371, "We cannot strait-jacket the courts below in their attempts to make a fair and just presentation of all facts and circumstances surrounding the cases before them, on the contrary, considerable latitude must be left to the trial judge, and his action will not be reversed in the absence of an abuse of discretion, or unless obvious disadvantage resulted therefrom to the other party. Tolomeo v. Harmony et ál., 349 Pa. 420, 37 A. 2d 511 (1944)."

The defendants contend the lower court erred in dismissing defendants' petition to correct the stenographer's record. The petition was duly filed and a rule issued. Plaintiffs filed an answer and the official reporter filed an affidavit that the transcript was cor-

rect. After oral argument the court, being of the opinion that the transcript was correct and accurate, dismissed the petition. We find here no abuse of discretion. Although the rights of all parties must be safeguarded, the courts must beware of the attempted use of this device to correct errors and oversights which occurred during the course of the trial.

Judgment affirmed.