419 A.2d 732

**Edmund G. MILLER and Clare F. Miller, Appellants,**

**v.**

**NATIONWIDE MUTUAL FIRE INSURANCE CO., and Donald F. Lewis, t/a the Don Lewis Agency.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1979.

Filed April 25, 1980.

202

Lawrence M. Aglow, West Chester, for appellants.

William J. Gallager, West Chester, for appellees.

Before PRICE, WIEAND and VAN der VOORT, JJ.*

* Judge DONALD E. WIEAND is sitting by special designation.

VAN der VOORT, Judge:

This is an appeal from Judgment denying appellant's motion for a new trial. The dispute arises over the coverage of a so–called Home Owners' insurance policy issued to the appellants, Edmund G. Miller and Clare F. Miller, husband and wife, by Nationwide Mutual Fire Insurance Company, (hereinafter Nationwide) through its agent, Donald F. Lewis, t/a The Don Lewis Agency, (hereinafter Lewis).

The Millers owned a home near rural Unionville in Chester County and operated a commercial horse business in a rented barn and adjacent acreage located approximately one–half mile from their home. The business consisted primarily of the purchase, raising, training, grooming and sale of horses, although they also undertook some breeding of horses and also boarded horses belonging to others for a fee. This commercial horse business was the sole occupation and source of livelihood of the Millers.

In August 1970, Mrs. Miller called at the office of Mr. Lewis, whom she had not previously met or known, for the purpose of purchasing an insurance policy. She brought with her a Home Owners' insurance policy issued by Aetna. She told Mr. Lewis that she had been advised by Aetna that it would not renew the policy because it was going out of the business of issuing this particular type of contract. She explained to Mr. Lewis that she wanted to get one like it from him. In the application which she filled out in Mr. Lewis's office with the aid of his secretary, she stated that her husband's business was "horse breeder". It would appear from the testimony of both Mrs. Miller and Mr. Lewis that she did not describe the nature of the business further and that she did not tell Mr. Lewis that the business was conducted on rented property located approximately one–half mile away from the premises which were to be insured. She did tell Mr. Lewis that she and her husband had some ponies, liability for which Mr. Lewis told her would be covered under the insurance policy like other household pets. The remainder of the conversation is in dispute.

Mrs. Miller testified that she made specific inquiry as to the scope of the liability coverage of the policy and gained the impression that the horse business was included in the coverage. In contradiction to this testimony, Mr. Lewis was specific in his recollection that he had told Mrs. Miller that the policy would cover only their household property and any personal pets connected with the household such as the ponies which Mrs. Miller told him were on the property. He testified that he informed her that the policy would not cover "the horse business" and that Mrs. Miller replied that that was alright because her husband took care of that business.

At the conclusion of this now disputed conversation, Mrs. Miller ordered a policy of insurance which Mr. Lewis issued the following day on behalf of Nationwide. Neither of the Millers read the policy after it was received until this litigation arose. The policy, quite specifically, excludes "business property", both in its affirmative description of the coverage and in the exclusion section of the policy. In the section dealing with "protection against liability", the policy provides in affirmative coverage that:

"This policy insures against liability arising from the ownership, maintenance or use of real property, meaning a. all premises, other than business property and farms, where the named Insured maintains a residence . .".

In the exclusion section of the policy, this further provision appears:

"Section II of this policy does not apply: 1. Under A (bodily injury and property damage) and C (guests medical expenses) to . . . d. business property which means property on which a trade, profession or occupation is being practiced as either principal or supplementary source of income . . .".

The accident which precipitated this litigation occurred some nine months after the policy was issued. At that time, the Millers had ten horses on their rental property, five owned by the Millers and five others being boarded. Mr.

Miller was returning the horses in the early evening from the field where they grazed to the rented barn where he kept them when five of them escaped and ran onto a nearby roadway where a collision occurred with a passing automobile. There were two horses involved in the collision, both of which had to be destroyed. One was owned by the Millers and the other was being boarded for a third party.

One of the passengers in the automobile was also injured and in due course sued the Millers and recovered a verdict of $43,000.00 which was sustained on appeal to this Court. Nationwide denied liability but provided counsel for the appellants at the trial on the basis of a non–waiver letter. The Millers also retained personal counsel. Nationwide refused to furnish counsel for the appeal.

The Millers then sued Nationwide and Lewis in the action now before us for $49,633.75 in reimbursement for the verdict of $43,000.00 legal expenses of $6006.11 and court costs of $627.64. They contended that they were covered by the terms of the insurance policy but that if they were not, it had been misrepresented to them by Lewis or at least inadequately explained.

Mrs. Miller testified that one of the horses involved in the accident was her personal property, purchased by her because she was sorry for it because of its poor condition. However, Mr. Miller's testimony was to the effect that this horse was being treated like the others, fed, groomed and trained and that once it had been put in good condition, it would be worth from $2,000 to $3,000. The Millers' primary source of livelihood at that time was buying, grooming, training and reselling horses. Mr. Miller also testified that the second horse in the accident was being boarded for a third party at the request of a local veterinarian and that the boarding fee was lower than customary because of favors which the veterinarian had done or would do for the Millers.

The Court submitted all of the issues to a jury which rendered a verdict against the Millers and in favor of

Nationwide and Lewis. A Motion for a New Trial was denied and this appeal followed.

Appellants contend: (1) that the trial Court erred in admitting into evidence appellants' tax returns; (2) that it erred in refusing to supplement its charge to the jury by three additional points requested by the appellants; and (3) that the verdict was against the weight of the evidence and the law. We find no merit in any of these contentions.

■ Appellants' Federal Income Tax Return for 1972 was introduced to show that the Millers were involved in the horse business on a substantial full–time basis. The return for 1973 was introduced to show that the Millers had deducted as a business expense the legal fees growing out of the litigation which followed the accident. This evidence went to the heart of the issue between the parties and was plainly relevant. Under such circumstances, the tax returns were properly admitted: *Graham Farm Land Company v. Commonwealth*, 363 Pa. 571, 70 A.2d 219 (1950).

Appellants next complain that the Court refused to supplement its charge by three additional points, as follows:

2. "An exclusion in an insurance policy will not apply to a given situation if there is no appreciable increase in the risk insured against";

4. "Even where a policy is written in unambiguous terms, the burden of proving the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him or her and that it was understood"; and

6. "An exclusion in a policy for property on which a business is being practiced must be strictly interpreted to mean 'exclusively practiced on the property' ".

■ The Court refused point 2 as already adequately covered in its charge and a reading of the charge affirms this conclusion. Point 4 was refused on the ground that the Court had already adequately charged the jury on the issue

of the burden of proof with respect to an exclusion. The Court had charged in detail that the insurance policy was to be construed "most strongly" against the insurance company and that any or all doubts and ambiguities must be resolved in favor of the insured. The jury had also been told that the insurance company had the burden of proving that the accident fell within an exclusion of the policy. We conclude that point 4 was adequately covered. Point 6 was properly denied because it was factually inapplicable to any issue pending before the jury.

 There remains the contention that the verdict was against the weight of the evidence and the law. It would appear that the jury believed Mr. Lewis and disbelieved Mrs. Miller, in reconstructing the conversation which led to the issuance of the disputed policy. This they were entitled to do. Mr. Lewis' testimony was explicit to the effect that he told Mrs. Miller that the policy would not cover their horse business and that she acquiesced in this understanding. The jury was also justified in concluding that the two horses which were involved in the accident were either owned by or in custody of the Millers in the course of their horse business. Clearly, the jury was justified in concluding that the insurance policy excluded risks growing out of the Miller's horse business. While it is true that these conclusions were contradicted by the testimony of the Millers, the jury was entitled to believe the testimony of Mr. Lewis and disbelieve that of the Millers. In reviewing a record to determine whether a verdict is against the weight of the evidence, we are bound to consider the testimony in the light most advantageous to the party favored by the jury and resolve in its favor all doubts and conflicts in the testimony: *Cutler v. Dushoff*, 192 Pa.Super. 37, 159 A.2d 524 (1960).

We find no basis for the further argument that the verdict was not in conformity with applicable law.

Affirmed.