## Howard Express Company *versus* Wile.

1. The doctrine that where there is a *scintilla* of evidence, it must be submitted to the jury, is exploded.

2. When there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury however strong or persuasive may be the countervailing proof.

3. Where a court should say that there is no evidence sufficient to authorize the inference, the verdict would be *without* evidence, not contrary to the weight of it.

4. Evidence may be legally admissible as tending to prove a particular fact, which yet standing by itself is incompetent for the purpose.

5. If a verdict is contrary to the charge of the court on a question of law, it must be set aside, whether it be the second or second hundredth.

6. When the weight of evidence on one side is of such a character as not to incline the beam at all, then it is as much a question for the court as if there were not even a *scintilla*.

February 10th 1870.   Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.   THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 144, to January Term 1870.

This was an action on the case commenced February 14th 1866, by Henry Wile against The Howard Express Company.   The declaration was that the defendants were common carriers, and received from the plaintiff a package containing $155, to be carried from Reading to Philadelphia, and delivered to the plaintiff, and that the package was lost by the negligence of the defendants.

The evidence of the plaintiff was that a sealed package, which in the receipt of the defendants was "said to contain $155," had been delivered to the defendants, reached Philadelphia and was taken on Saturday, December 30th 1865, by the defendants' proper clerk to the office of the plaintiff.   The office was closed and locked, and the clerk, after making some ineffectual effort to find the plaintiff, wrote a notice for him to call at the Express office for the package, and slipped the notice under the door.   The clerk made no further effort to deliver the package, took it back to the company's office and gave it to the chief clerk.   A person in the employ of the plaintiff afterwards got the notice, and on the same afternoon went to the Express office and asked for the package, but was told that the delivering clerk had not returned, and would probably stop at the plaintiff's office again.

The defendants gave evidence that the package was brought by the delivering clerk on the same afternoon and given to the chief clerk; he put it into a fire-proof safe in which such packages were kept.   When the office was closed at night, the keys of the safe were handed to the night watchman.   On Monday, it being the 1st of January, the office was closed between twelve and one

64   201
153  575
64   201
176   33

64    201
20 SC 6627
64    201
e 26 SC 2607
64    201
f 210  2460
64    201
29 SC 2 27
f 29 SC 2408
64    201
33 SC 2471
64    201
f 222  4273

[Howard Express Co. *v.* Wile.]

o'clock, up to which time no one had called for the package; the keys were again delivered to the same watchman. During that night a fire occurred in the office building; the watchman opened the safe, took out all the packages he could find, put them into a box and locked the safe. The box was sent to the Adams Express office. Other packages were taken elsewhere, the police having assisted to remove the portable property. The fire was then falling about the watchman; the back part of the office was in flames; the watchman was in great danger and was much excited. The safe was afterwards found in the cellar of the building, having fallen through. The defendants recovered all the packages which had been taken away except three, that in question being one of them.

The defendants presented the following points:—

1. If the defendants promptly took the package to the place to which it was directed for the purpose of delivery, and no person was present authorized to receive it, the contract of defendants as carriers or forwarders was completed, and after that the defendants were only liable as bailees without hire, viz., for gross negligence.

2. As such bailees the defendants are not liable for the loss of the package by fire while in their possession except for gross negligence.

3. There is no evidence either of negligence or want of ordinary care on the part of the defendants.

4. There is not sufficient evidence of the contents of the package to be submitted to the jury.

The court answered the points as follows:—

"If the defendants promptly took the package to the place to which it was directed for the purpose of delivery, and no person was present authorized to receive it, the contract of defendants as carriers or forwarders was completed, and after that the defendants were liable only as bailees without hire for gross negligence."

The verdict was for the plaintiff for $185.

The defendants moved for a new trial, and on the motion, it was agreed by the counsel for the parties, that the question of negligence might be considered and decided by the court in banc as if it had been reserved at the trial.

On the motion for a new trial, Hare, P. J., delivered the following opinion, which will show the ground on which the case was ruled below.

* * * "The question whether the loss was due to negligence was left to the jury, who decided it in favor of the plaintiff. It is the second verdict to the same effect, the former having been set aside by the court as contrary to the weight of evidence. Obviously, if the jury are the sole judges of such matters, it would

[Howard Express Co. *v.* Wile.]

be wrong to reverse a decision thus solemnly confirmed. It is, however, contended that their jurisdiction is concurrent, not exclusive; that negligence is a wrong which should not be presumed, and that when there is no evidence from which an inference of misfeasance or of a want of due care can reasonably be drawn, the court should take the case into their own hands, by directing a verdict for the party against whom the charge is made. Such is unquestionably the duty of the court when there is an entire want of evidence; but it has, until a very recent period, been generally if not universally held, that when conclusions of fact are to be deduced from testimony, the case will not cease to be within the province of the jury because the evidence is clear, and could only be interpreted in one way by a man of sound judgment. If the question is plain, there is the more reason for supposing that it will be decided correctly, and if this expectation is disappointed by the verdict, it may be set aside and a new trial granted.

"This rule would seem to be peculiarly applicable when the conduct and motives of individuals are put at issue, because such an investigation is one where the judgment of twelve men, drawn from the body of the county, may justly be preferred to the opinion of one, however wise or learned. The doctrine that questions of fact ought not to be left to the jury when the evidence does not admit of a reasonable doubt, has, however, been gaining ground of late years, both in England and this country. In the recent case of Ryder *v.* Wombwell, 4 Law Rep. Ex. 32, 39, Willes, J., in delivering the opinion of the Exchequer Chamber, said that 'it was formerly the custom in all cases to leave the question to the jury if there was any evidence, even a scintilla in support of the case, but it is now settled that the question for the judge (subject of course to review) is, as stated by Maule, J., in Jewell *v.* Parr, 13 C. B. 916, not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established.' In Toomey *v.* R. W. Co., 3 C. B. N. S. 150, Williams, J., enunciates the same idea thus: 'It is not enough to say that there was some evidence. A scintilla of evidence clearly would not justify the judge in leaving the case to the jury. There must be evidence on which they might reasonably and properly conclude that there was negligence;' the fact in that case to be established. And in Wheelton *v.* Hardisty, 8 Ex. 262, in the well considered judgment of the majority of the court it is said: 'The question is, whether the proof was such that the jury could reasonably come to the conclusion that the issue was proved. This,' they say, 'is now settled to be the real question in such questions by the decisions in the Exchequer Chamber, which have, in our opinion, so properly put an end to what had been treated as the rule that a case

[Howard Express Co. *v.* Wile.]

must go to the jury if there were what had been termed a scintilla of evidence.'

"If these views prevailed in Pennsylvania, there would be little difficulty in saying that the jury should have been instructed to find for the defendants, and that judgment should now be entered in their favor, under an agreement made by counsel that the point should be decided as if it had been reserved at the trial. There is nothing in the evidence indicating negligence, and much to repel such an inference. But the decisions in this state have, with little or no variation, followed the ancient doctrine that the jurors should respond to questions of fact; the judge, to those involving matters of law. It cannot be denied that this rule may sometimes be attended with inconvenience, but the advantage resulting from it would seem far to outweigh the evils. The distinction between law and fact, is one easily comprehended and applied. It affords an important safeguard against any undue extension of the power of the court, and can hardly be laid aside without endangering the institution which has always been esteemed the peculiar excellence of our system of jurisprudence. I may be permitted to express my belief, that such a result would be one much to be regretted. If there were no other reason for preserving the trial by jury, it should be cherished as a means of popular instruction. It is by taking part in the administration of their laws that the people can best learn to make them. Nor is this all. The jury is also a school for the jurist and the judge. In the speeches of counsel, in the charge of the court the law ceases to be an abstract science, and descends to the level of everyday life. Legal rules are divested of their technicality, and assume the proportions of common sense. It is in a great measure to this cause that the common law owes the practical character by which it has been distinguished for many years.

"I do not, however, mean to imply that the benefits of trial by jury are merely collateral and indirect, and am, on the contrary, convinced that the great majority of causes are more satisfactorily determined by this method than they could be by any other. Nothing is more common than to hear verdicts censured, but it does not follow that the jurors are always wrong when they differ from the lawyers and the judge. They take the popular view of every question—that which strikes the common mind, or appeals to the individual conscience—and although this is often tinged with error, it still contains elements of great importance in the investigation of moral and legal truth. I might go further, and speak of the value of the jury as giving the minority an opportunity to be heard in a country where all the branches of the government have a tendency to become the representatives of a part as opposed to the whole. But enough has perhaps been said to show that in a matter of so much importance we should be

slow to alter what time has sanctioned. And it is very obvious that if a change is requisite it should come from the court of last resort, who can look at the subject in all its bearings, and establish a uniform rule throughout the state. The Supreme Court have said that when a culpable want of care is shown, the judge should pronounce it negligence; but there is as yet no decision that when the conduct of a party is impugned as negligent the jury can be instructed that there was no want of care. Unless the issue turns on a single point the cases are obviously not the same or even analogous. The court may perhaps say that a particular act of omission is or is not wrongful in itself, or relative to the other facts in evidence, but they cannot go further consistently with the principle on which the trial by jury is based.

"The rule for a new trial is discharged, and judgment entered for the plaintiff on the verdict."

The defendants took a writ of error, and assigned for error, the answer to their points, and the entering of judgment on the reserved question.

*D. Webster*, for plaintiffs in error.—There was no sufficient evidence of negligence. The court should have determined it as matter of law: Pittsburg & Con. Railroad *v.* McClurg, 6 P. F. Smith 294; Catawissa Railroad *v.* Armstrong, 2 Id. 286; Penna. Railroad *v.* Ogier, 11 Casey 71. Negligence is the absence of care according to the circumstances: Frankford Turnpike *v.* Trenton Railroad, 4 P. F. Smith 345.

*H. G. Hartranft* and *W. Ernst*, for defendant in error.—Non-delivering goods is primâ facie evidence of negligence, and throws the burden of proof on the defendant: Verner *v.* Sweitzer, 8 Casey 208. Where the deposit of the goods until delivery is merely accessary to the carriage, the common carrier is liable in case of loss by fire in the mean time: Clarke *v.* Needles, 1 Casey 338. If the carrier cannot deliver, he must still keep the goods safely in the mean time: Tanner *v.* Oil Creek Railroad Co., 3 P. F. Smith 415.

The opinion of the court was delivered, February 17th 1870, by

SHARSWOOD, J.—The doctrine that wherever there is a scintilla of evidence of a material fact, the question must be submitted to the jury has not stood the test of experience, and it has accordingly been exploded in England: Ryder *v.* Coombwell, Law Rep. 4 Exch. 34. The more reasonable statement of the rule is, that where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. A court may set aside a verdict as against the weight of the evi-

[Howard Express Co. *v.* Wile.]

dence, but that is the most they can do to assist the party. But in a case in which a court ought to say that there is no evidence sufficient to authorize the inference, then the verdict would be without evidence, not contrary to the weight of it. Wherever this is so they have the right, and it is their duty to withhold it from the jury. Evidence may be legally admissible as tending to prove a particular fact, which yet by itself is utterly insufficient for the purpose. It may be a link in the chain, but it cannot make a chain unless other links are added. Where successive juries from prejudice against one party or sympathy for the other, persist in finding verdicts wholly unwarranted, must the court permit palpable injustice to be done? If a verdict is contrary to the charge of the court on a question of law it must be set aside, whether it be the second or the second hundredth. Where evidence on both sides is to be weighed, so as to determine on which side the scales incline, the jury is the appropriate tribunal. But where the weight on one side is of such a character as not to incline the beam at all—what the civilians term a mere *adminiculum*, good to help something else but nothing in itself—nothing but a conjecture—then it is as much a question for the court as if even this *scintilla* was absent. The rule thus understood does not impair the true value of trial by jury. It restrains it from arbitrary power, which would endanger its existence, and might lead to its entire abolition, a result which I agree with the learned President of the District Court, would be very much to be deprecated.

The plaintiff's own evidence in the court below showed that the defendants had fully performed their duty as carriers. So the jury were properly instructed. The package was taken to the plaintiff's place of business during business hours, and no one was there to receive it. The office was closed—no one was about. Notice was left under the door, which in fact was received. All that was done was to send to the office of the Express Company, where the servant or clerk was told that the company's messenger was out delivering packages and had not yet returned. No other or further demand was made. Here the plaintiff rested, and here he might have been nonsuited had a motion for that purpose been made. On his own showing, the *onus* of proving negligence was upon him. The defendants, however, took up the case at this point. It was on Saturday the package was received, and attempted to be delivered. When returned to the defendants it was deposited in their fire-proof. On the Monday night following a fire broke out in the building, in no way pretended to be attributable to the defendants or any of their servants. Their watchman having the key of the fire-proof, left with him for the very purpose of using in such a contingency, opened it and removed the packages in order to have them taken to some place of safety. In the hurry, excitement and confusion of the scene this particu-

[Howard Express Co. *v.* Wile.]

lar package was lost or stolen. What was there in this to leave to a jury as evidence of negligence? We think there was nothing. It is said that if the fire-proof had not been opened, all that it contained would probably have been saved. The fire-proof fell through into the cellar, and was found uninjured the next day. But we are not to judge the actions of men by the event. The question is, did the watchman act with reasonable care and prudence? Had he suffered the package to remain when he had time and opportunity to remove it, and it had been burned up by the fire, or the fire-proof broken open and rifled of its contents, the imputation of negligence would have been much more plausible.

As it was agreed between the counsel, on the motion for a new trial, that the question of negligence might be considered and decided by the court in banc, the same as if it had been reserved at the trial, and it appears by the record that the court gave judgment for the plaintiff on the point reserved, we have the unquestionable right, besides reversing the judgment, to enter such a judgment as the court below ought to have done.

Judgment reversed, and now judgment for the defendants below on the point reserved.