660 A.2d 626

**John W. TRUDE**

v.

**Brian MARTIN, an Individual, Rod Shellhouse, an Individual, Nancy Brown, an Individual, Donati's Inc., a Corporation and Equitable Financial Management Inc., a Corporation.**

**Appeal of EQUITABLE FINANCIAL MANAGEMENT INC.**

Superior Court of Pennsylvania.

Argued Feb. 7, 1995.

Filed May 9, 1995.

Reargument Denied July 19, 1995.

---

618

Robert J. Marino, Pittsburgh, for appellant.

Richard Wile, Pittsburgh, for appellee.

Before CAVANAUGH, JOHNSON, AND SAYLOR, JJ.

SAYLOR, Judge:

This is an appeal by Equitable Financial Management, Inc. ("Equitable") from an order of the Court of Common Pleas of Allegheny County entering judgment in favor of Appellee, John W. Trude. We affirm.

John Trude filed a civil action seeking money damages for injuries sustained by him as a result of an incident which occurred in the rear of Donati's restaurant during the early

morning hours of June 29, 1988. At the time of the incident, Donati's leased its restaurant space from Equitable. The entrance for customers of Donati's was located at the front of the building, adjacent to the main parking lot. In the rear of the restaurant were three exits which were not designated for customer use, one of which led from the kitchen. The kitchen exit consisted of a door, a landing surrounded by a waist-high brick wall with a concrete capstone on it, and stairs leading from the landing down to the parking area. The kitchen exit and landing, together with the wall surrounding it and the steps leading to the parking lot, remained under Equitable's control since they were part of the structure of the main building which housed Donati's leased premises.

Ronald C. Donati, the owner of Donati's restaurant, occasionally hired Trude to perform various maintenance jobs at the restaurant. On June 28, 1988, Donati hired Trude to paint a door at the rear of the restaurant. Trude painted the door from 9:00 p.m. until about midnight. After Trude finished painting, he went to the bar area of the restaurant where he was served alcoholic beverages by Nancy Brown, the bartender, until 2:00 a.m. At that time, Rod Shellhouse, the night manager, locked the front door and allowed several people to remain in the bar and continue drinking, including Ms. Brown, Trude, and Brian Martin, with whom Trude was acquainted. Shellhouse permitted the group to exit Donati's through the rear door to the kitchen sometime in the early morning hours of June 29.

Shortly after exiting Donati's, Trude and Martin had a disagreement in the parking area directly behind the building. Martin became combative toward Trude, shouting and swinging wildly. Trude retreated up the stairs to the landing outside the kitchen door and pounded on the door. When Shellhouse did not open the door, Trude sat on the concrete capstone on top of the brick wall which surrounded the landing outside of the kitchen door. Martin ascended the stairs and pushed Trude. Martin's push dislodged the concrete capstone on top of the wall, causing Trude to fall six feet to the ground below, fracturing his neck and rendering him a

quadriplegic. As a result of these events, Martin was convicted of aggravated assault in a non-jury trial in the Court of Common Pleas of Allegheny County.

Trude instituted an action against Martin, Shellhouse, Brown, Donati's, and Equitable, alleging that his injuries were the direct result of the defendants' negligence. With respect to Equitable, Trude alleged that Equitable had been negligent in failing to inspect and maintain the wall and the concrete capstone behind Donati's kitchen exit, and that such failure created a dangerous condition which was a substantial factor in causing his accident and injuries.

On the first day of the jury trial, the trial court granted Trude's oral motions to amend his complaint to include the following averments of negligence by Equitable: failure to maintain the brick wall and landing in accordance with the BOCA code and the Pennsylvania Fire and Panic Act; failure to conduct a proper inspection with a qualified architect or engineer upon purchasing the property; failure to tear down and reconstruct the brick wall and capstone in order to comply with all current safety codes and laws; misrepresentation of information to obtain a building permit; and finally, renovation to the premises in 1980 and 1984 in a negligent manner.

The evidence at trial indicated that the capstone on top of the brick wall had indeed been loose. Trude's expert witness testified that given the amount of force involved when Trude was pushed, there could not have been any bond, such as mortar, between the wall and the capstone, because Martin's and Trude's actions would not have created enough force to dislodge a capstone that was still bonded to the wall. Martin testified that he had been employed at Donati's approximately a year and a half prior to the incident and that he frequently sat on the capstone from which Trude had fallen. Martin testified that at the time he had sat on the capstone, he had noticed that it was loose and he could feel it shift beneath him. Donati testified that there were visible cracks in the wall surrounding the landing and that these cracks had been present when Donati's opened for business in April, 1986. Donati further testified that following Trude's accident, he

attempted to lift the capstone and return it to the wall, and that when he did so, he observed that there was no mortar adhering to the capstone itself. Further expert testimony supported the proposition that the loose capstone was partially responsible for Trude's fall and the severity of his injuries. An engineer gave his expert opinion that the failure to have the capstone properly affixed to the wall was a substantial factor in causing Trude's fall. A medical expert testified that, in falling with the 170 pound capstone, Trude would have experienced more force and pressure, particularly on his neck and spine, than if he had not fallen with the capstone.

The jury returned a verdict in favor of Trude in the amount of $4,300,000, rendering all defendants jointly and severally liable. In response to special interrogatories, the jury found all defendants negligent and further found that each defendant's negligence was a substantial factor in causing Trude's harm. Specifically, the jury found Martin 40% responsible, Shellhouse 29% responsible, Brown 20% responsible, Donati's 49% responsible (the sum of the fault of its employees, Brown and Shellhouse), and Equitable 11% responsible. However, because Trude had executed a joint tortfeasor release with Donati's prior to trial, and because Donati's was held to have been 49% responsible for Trude's damages, Equitable's and Martin's joint and several liability was reduced to 51% of the verdict, or $2,193,000. The trial court molded the verdict accordingly. Delay damages were assessed against Equitable and Martin in the amount of $333,336, jointly and severally, based upon the amount of the molded verdict, $2,193,000.

Equitable thereafter filed a motion for post-trial relief, seeking judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. The trial court denied the motion, and this appeal followed.

On appeal, Equitable raises the following issues for review: 1) Whether the trial court erred in failing to grant a compulsory non-suit of judgment n.o.v. to Equitable on the basis that Equitable had no legal duty toward Trude under the circumstances.

2) Whether the trial court erred in failing to grant a new trial when it had refused to charge the jury on the doctrine of contributory negligence, and had submitted the case to the jury under the Pennsylvania Comparative Negligence Act without also including the negligence of Trude.

3) Whether the trial court erred in failing to grant a new trial when it had refused to charge the jury on the doctrine of intervening, superseding cause.

4) Whether the trial court erred in failing to grant a new trial when it had permitted Trude to amend his complaint on the first day of trial to include causes of action not plead in the original complaint, beyond the statute of limitations.

5) Whether the trial court erred in failing to grant a new trial when it had refused to admit evidence of Trude's lifestyle, station in life, and work history, while simultaneously permitting Trude's counsel to introduce Trude's daughter to the jury and to comment upon Trude's lifestyle during opening statements and during Trude's direct testimony.

6) Whether the trial court erred in failing to grant a new trial when it had charged the jury that if Trude was not a trespasser, then, as a matter of law, he had to be a business invitee.

7) Whether the trial court erred in its computation of delay damages.

Equitable first argues that it had no legal duty to Trude because, as a matter of law, Trude was a trespasser at the time of the incident. Equitable further argues that, even if it had a legal duty to Trude, the conduct of Martin constituted an intervening, superseding cause which exonerated Equitable from liability for Trude's harm. Therefore, Equitable claims that the trial court erred in denying its motion for JNOV.

JNOV may be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Mitzelfelt v. Kamrin,* 379 Pa.Super. 121, 549 A.2d 935 (1988). When reviewing the propriety of an order granting or denying JNOV, this court

must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference that can be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Id.*, 379 Pa.Super. at 125–126, 549 A.2d at 937–938. This court will reverse the lower court only if we find an abuse of discretion or error of law which controlled the outcome of the case. *McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 450 A.2d 991 (1982).

The standard of care which a possessor of land owes to an entrant upon the land depends upon whether the entrant is a trespasser, licensee or business invitee. *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983); *see also*, Restatement (Second) of Torts §§ 328–344 (1965). Generally, the determination of whether an individual is a trespasser, licensee or invitee is one of fact for the jury. *Palange v. City of Philadelphia, Law Department*, 433 Pa.Super. 373, 640 A.2d 1305 (1994).

Section 360 of the Restatement (Second) of Torts defines the scope of a landlord's duty to persons who are on the land by permission of the tenant:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, *is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.*

Restatement (Second) of Torts § 360 (1965) (emphasis supplied).

Here, Equitable's control of the area at issue was established through the trial testimony of Equitable's vice-president, who stated that there was an understanding between Equitable and Donati's that the kitchen door exit, landing,

wall, and stairway were all considered part of the structure of Equitable's building and were not part of Donati's leased premises. There was also testimony by other representatives of Equitable that Equitable was responsible for fixing any structural problems on Donati's exterior and that Equitable thus would have been responsible for rectifying any structural problems pertaining to the kitchen door exit and the landing.

The testimony at trial also supported the conclusion that Trude was indeed an invitee on Equitable's premises, and was not a trespasser at the time of the incident. Section 329 of the Restatement (Second) of Torts defines a trespasser as "a person who enters or remains upon land in possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (1965). An invitee is defined by section 332 of the Restatement (Second) of Torts in the following manner:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is *invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.*

(3) A business visitor is a person who is *invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.*

Restatement (Second) of Torts § 332 (1965) (emphasis supplied).

Trude was hired by Donati's to paint a door on the night of the incident. In doing so, he was on the premises for a purpose which was indirectly connected with the business dealings of Equitable. As lessor of the premises, Equitable had a business interest concerning the maintenance of the lessee's establishment, because such improvements would ensure that the lessee's business continued on the leased premises. Thus, Trude was a business visitor upon his initial entry of the premises. After painting the door, he entered the bar section of Donati's, began drinking, and was permitted to remain in the bar after closing time. By purchasing alcohol

from the bar inside Donati's, Trude became a public invitee, since he had been invited to remain on the premises for a purpose for which the premises were held open to the public. *See, Cutler v. Dushoff,* 192 Pa.Super. 37, 159 A.2d 524 (1960) (duty of care owed to patron of restaurant is that owed to an invitee). Although most patrons of Donati's used the front entrance to enter and leave the establishment, Trude had been given permission to use the kitchen exit behind the building. Thus, at the time of the incident, Trude was an invitee on the premises and had not exceeded the scope of his privilege to be on the premises when he left the building through the kitchen door exit. Therefore, Trude did not lose his status as an invitee and become a trespasser merely by exiting Donati's and proceeding down the back stairs to the parking lot.

The Superior Court addressed a similar situation in *Portee v. Kronzek,* 194 Pa.Super. 193, 166 A.2d 328 (1960). The defendant in *Portee* was the owner of an apartment building which was rented to a number of tenants, including a tenant who ran a bar in the basement of the building. The plaintiff was injured on the steps outside of the bar. A verdict was returned in favor of the plaintiff, and the Superior Court, in affirming the judgment, noted that persons who enter bars "are ... business patrons and must be considered invitees of the tenant. The person in control of the property is liable to such an invitee if he should have known that the invitee would reasonably believe that his presence is permitted or desired because of its connection with the business of the tenant." *Id.,* 194 Pa.Super. at 197, 166 A.2d at 331, citing *Parsons v. Drake,* 347 Pa. 247, 32 A.2d 27 (1943). The court also stated that "the owner of a building who leases out different parts of the building has control over those areas not specifically leased and is, therefore, liable for negligence in the maintenance of the controlled areas even though the areas are appurtenant to one or more of the leaseholds." *Id.,* 194 Pa.Super. at 196, 166 A.2d at 330.

Thus, since Trude entered Donati's as an invitee and retained this status upon exiting the building, Equitable owed him a duty of care to protect him from harm resulting from

any physical condition on the land of which Equitable knew or should have known by the exercise of reasonable care. *See,* Restatement (Second) of Torts § 343 (1965).

Conceding that even if it did owe Trude a duty of care, Equitable further argues, however, that it is not liable for the harm which Trude suffered on the premises because Martin's actions constituted an intervening, superseding cause.

Section 441 of the Restatement (Second) of Torts defines an "intervening force" as "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of Torts § 441 (1965). A "superseding cause" is defined as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440 (1965). Among the factors to consider in determining whether a subsequent force is an intervening or superseding cause are whether the force is operating independently of any situation created by the first actor's negligence and whether it is a normal result of that situation. *Chacko v. Commonwealth, Department of Transportation,* 148 Pa.Cmwlth. 494, 611 A.2d 1346 (1992). In *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983), the Pennsylvania Supreme Court noted:

> [E]ven where an intervening act is wrongful it does not become a superseding cause unless, looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable.

*Id.,* 502 Pa. at 253, 465 A.2d at 1237; *see also,* Restatement (Second) of Torts § 442 (1965).

Here, although Martin's act of pushing Trude while Trude was seated upon the concrete capstone atop the brick wall constituted an intervening force, the consequences of this act were not so extraordinary or unforeseeable as to render it a superseding cause. *See,* Restatement (Second) of Torts § 447 (1965).

628 

 Furthermore, Pennsylvania courts have adopted the Restatement's "substantial factor" approach concerning legal causation. Under this approach, a plaintiff must prove that a defendant's negligent conduct was a substantial factor in bringing about the harm suffered. *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970); *see also*, Restatement (Second) of Torts § 431(a) (1965). In situations where more than one substantial factor brings about harm, the principle of concurrent cause applies. Even though concurrent causes may have contributed to the harm, if a defendant's negligence was a substantial factor in producing the result, the defendant may be held liable for the full amount of the damages. *Monzo v. Commonwealth, Department of Transportation*, 124 Pa. Cmwlth. 360, 556 A.2d 493 (1989), *appeal granted*, 523 Pa. 652, 567 A.2d 655 (1989). Thus, "[a] party may recover damages where two or more substantial causes combine to cause an event, even if no one cause standing alone would have brought about the injury. To escape liability, the defense must show that the plaintiff's condition would have been the same today even without the defendant's negligence." *DeVita v. Durst*, 167 Pa.Cmwlth. 105, 113, 647 A.2d 636, 640 (1994), citing *Boushell v. J.H. Beers, Inc.*, 215 Pa.Super. 439, 258 A.2d 682 (1969). Furthermore, the peculiar way in which an injury may result is not material so long as there was a foreseeable probability of injury to one within the ambit of danger. *Masciangelo v. Dolente*, 222 Pa.Super. 368, 295 A.2d 98 (1972). In *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977), the Pennsylvania Supreme Court stated:

> If [an] actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm *or the manner* in which it occurred does not prevent him from being liable. (Emphasis added).

*Id.*, 474 Pa. at 596, 379 A.2d at 114, quoting Restatement (Second) of Torts § 435(1) (1965); *see also, Churbuck v. Union Railroad Company*, 380 Pa. 181, 110 A.2d 210 (1955).

 Here, the jury heard ample evidence from which it could conclude that Equitable's negligent maintenance of the

premises created a dangerous condition, specifically, the loose capstone which was in danger of falling off of the wall if enough weight rested on it at the wrong angle. Thus, the negligent maintenance of the capstone was a substantial factor in causing Trude's injuries, concurrent with Martin's act of pushing Trude, which was also a substantial factor in causing Trude's injuries. Furthermore, it was foreseeable that because of the existence of a dangerous physical condition on Equitable's land, a person on or around the wall could be injured as a consequence of the dangerous condition. Accordingly, Equitable's negligent maintenance of the capstone was a concurrent cause of Trude's harm. Thus, when viewed in the light most favorable to Trude, the verdict winner, the facts in this case support the inference that Equitable owed a duty to Trude and that the harm which Trude suffered was concurrently caused by both the conduct of Martin and the negligence of Equitable. Therefore, the trial court properly denied Equitable's motion for JNOV.

Equitable also contends that the trial court erred in refusing to charge the jury on the doctrine of contributory negligence and intervening, superseding cause, and in charging the jury that if they found that Trude was not a trespasser, then he was a business invitee as a matter of law. Therefore, Equitable argues, the trial court erred in denying its alternative motion for a new trial.

In reviewing the denial of a motion for a new trial, this court must determine whether the trial court committed an abuse of discretion or error of law which controlled the outcome of the case. *Wood v. Smith*, 343 Pa.Super. 547, 495 A.2d 601 (1985). In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, the verdict would differ if another trial were granted. *Robertson v. Atlantic Richfield Petroleum Products Co.*, 371 Pa.Super. 49, 537 A.2d 814 (1987), *allocatur denied*, 520 Pa. 590, 551 A.2d 216 (1988).

Equitable first claims that it was entitled to a new trial on the basis that the trial court erred in refusing to instruct the

jury on contributory negligence. "When a plaintiff's contributory negligence is at issue, it is error for a trial court to fail to charge the jury thereon." *Speer v. Barry,* 349 Pa.Super. 365, 371, 503 A.2d 409, 412 (1985), citing *McCullough v. Monroeville Home Association, Post 820, Inc.,* 270 Pa.Super. 428, 411 A.2d 794 (1979). Therefore, if either party offers any evidence "which alone would justify an inference of [contributory negligence], it must go to the jury, no matter how strong or persuasive may be the countervailing proof...." *Heffernan v. Rosser,* 419 Pa. 550, 554–555, 215 A.2d 655, 657 (1966), quoting *Howard Express Co. v. Wile,* 64 Pa. 201 (1870). In the absence of any evidence to support a finding of contributory negligence, however, it is error for the trial court to give such charge to the jury. *Hanlon v. Sorenson,* 289 Pa.Super. 268, 433 A.2d 60 (1981); *Thomas v. Tomay,* 413 Pa. 270, 196 A.2d 740 (1964).

Our review of the record has revealed no evidence from which contributory negligence on the part of Trude can be inferred. There is no evidence that Trude's consumption of alcohol on the evening in question contributed to the harm which he suffered; furthermore, evidence of voluntary intoxication does not in itself raise the issue of contributory negligence. *See, Kriner v. McDonald,* 223 Pa.Super. 531, 302 A.2d 392 (1973) (fact that decedent may have been drinking prior to accident had no bearing on issue of whether he was contributorily negligent); *Lehman v. McCleary,* 229 Pa.Super. 508, 329 A.2d 862 (1974) (mere fact that decedent may have been legally intoxicated at time of accident does not mean that he was contributorily negligent). Accordingly, the trial court did not err in refusing to charge the jury on contributory negligence because such issue had not been raised in this case.

Furthermore, there was no evidence presented at trial which indicated that Trude had any safer alternatives than retreating to the landing outside of Donati's and seeking help from the restaurant manager. Accordingly, the trial court properly refused to instruct the jury concerning contributory negligence when there was no evidence that Trude chose the more hazardous of two alternatives. *See, Downing v. Shaffer,*

246 Pa.Super. 512, 371 A.2d 953 (1977) (trial court erred in charging jury that plaintiff was contributorily negligent if she voluntarily chose the more hazardous of two alternatives, when no evidence was presented which would allow jury to conclude that there was safe route which plaintiff failed to take).

 Equitable also contends that a new trial is warranted because the trial court erred in failing to instruct the jury regarding intervening, superseding cause. However, " '[i]t is manifestly improper for a court ... to submit to a jury, for their determination, a point which the evidence does not warrant.' " *Downing v. Shaffer, supra*, 246 Pa.Super. at 519, 371 A.2d at 956, quoting *Millen v. Miller*, 224 Pa.Super. 569, 576, 308 A.2d 115, 119 (1973) (citation omitted). It is the exclusive function of the trial court to determine whether the evidence and facts presented at trial create an issue upon which the jury may reasonably differ concerning whether the defendant's conduct was a substantial factor in causing the plaintiff's harm. Restatement (Second) of Torts § 434(1)(a) (1965). Furthermore, it is also the trial court's exclusive function "to declare the existence or non-existence of rules which restrict the actor's responsibility short of making him liable for harm which his negligent conduct is a substantial factor in bringing about, and to determine the circumstances to which such rules are applicable." Restatement (Second) of Torts § 453 (1965). The "rules" to which this section refers include those concerning superseding causes and intervening forces, as set forth in sections 440–443 of the Restatement (Second) of Torts. *See*, Restatement (Second) of Torts § 453 cmt. a (1965). Only in a case where there is room for reasonable difference of opinion concerning the negligent character of the intervening act of a third person or the reasonable foreseeability of its occurrence should the trial court submit the question of superseding cause to the jury. Restatement (Second) of Torts § 453 cmt. b (1965). Where, as in this case, however, the facts are undisputed that the multiple causes of the plaintiff's harm were concurrent substantial factors in bringing about the plaintiff's injury, no

question concerning superseding cause exists for the jury and no instruction thereon is warranted.

Equitable further argues that a new trial is warranted because the trial court erred when it instructed the jury that if they did not find that Trude was a trespasser, then he was a business invitee as a matter of law. When reviewing a claim that the trial court erred in instructing the jury, the scope of appellate review is whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. *Butler v. Kiwi, S.A.,* 412 Pa.Super. 591, 604 A.2d 270 (1992), *appeal denied,* 531 Pa. 650, 613 A.2d 556 (1992). The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990). Generally, the determination of whether an individual is an invitee, a licensee, or a trespasser is for the jury. *Palange v. City of Philadelphia Law Department,* 433 Pa.Super. 373, 640 A.2d 1305 (1994). However, where the evidence is insufficient to support such issue, the trial court may appropriately remove that issue from the jury. *Id.* Here, the evidence at trial demonstrated that upon his initial entry upon Donati's leased business premises, Trude was an invitee. The Restatement (Second) of Torts provides that a possessor of land who leases part of the land and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him may be liable to an invitee or even to a licensee of the lessee. Restatement (Second) of Torts § 360 (1965). Furthermore, in order to be an invitee, it is not necessary that the entrant be on the land for the purposes of the possessor's business; rather, it is sufficient that the visit be for the convenience or arise out of the necessities of others who are themselves on the land for a business purpose. *See,* Restatement (Second) of Torts § 332 cmt. g (1965).

Thus, when Trude initially entered Donati's, he was there for the business purpose of maintenance and would have been an invitee in regard to both Donati's and Equitable. Further-

more, even if Trude became a licensee of Donati's when he finished working and remained on the premises to drink, he still was there for the purposes of Donati's business, i.e., running a drinking establishment. Accordingly, he would have remained an invitee in regard to Equitable. Thus, there were no facts to support the proposition that Trude was at any time a licensee in regard to Equitable, and the trial court properly instructed the jury that he could either be found to be an invitee or a trespasser.

■■■ Equitable also claims that its motion for a new trial should have been granted because the trial court erroneously permitted Trude to amend his complaint to include additional causes of action after the statute of limitations had run. Amendments to pleadings are freely allowed under the Pennsylvania Rules of Civil Procedure, *see,* Pa.R.C.P. No. 1033, and the decision to grant or deny permission to amend is within the sound discretion of the trial court. *Daley v. John Wanamaker, Inc.,* 317 Pa.Super. 348, 464 A.2d 355 (1983). An amendment, however, may not introduce a new cause of action after the applicable statute of limitations has run. *Id.*

■■■ Here, contrary to Equitable's assertion, the amendments which the trial court permitted did not introduce new causes of action but merely amplified the originally pled averments that Equitable had breached its duty to inspect and discover the condition of the concrete capstone and to take steps to fix the capstone. Specifically, evidence of Equitable's violation of the BOCA Code was introduced to show that if the wall had met the Code standards, which were applicable to the renovations conducted by Equitable in 1984, the cap would have been securely affixed to the wall during the process of renovating the wall to comply with Code standards. Accordingly, the amendments added by Trude simply restated the grounds originally set forth as the basis for his cause of action, i.e., Equitable's negligence in failing to inspect and maintain the brick wall. Accordingly, the trial court did not err in permitting Trude to amend his complaint to include such allegations.

Next, Equitable asserts that the trial court should have granted its motion for a new trial on the grounds that the preclusion of testimony concerning Trude's lifestyle was error. Specifically, Equitable contends that evidence of Trude's lifestyle was admissible to impeach Trude's credibility, and that, since it was precluded from introducing such evidence, Trude's counsel should have been precluded from eliciting testimony that Trude lived with his parents and that his daughter also lived with him.

"When the basis of the request for a new trial is the lower court's ruling(s) on evidence, to constitute reversible error, such ruling 'must be shown not only to have been erroneous but harmful to the party complaining. . . .' " *Wilson v. Donegal Mutual Insurance Co.*, 410 Pa.Super. 31, 34, 598 A.2d 1310, 1312 (1991), quoting *Hart v. W.H. Stewart, Inc.*, 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989) (citations omitted). "An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Id.*

When a witness or party places his character for truthfulness at issue, however, character evidence which has a bearing on the person's reputation for veracity and truthfulness is admissible for impeachment purposes. Here, Trude's character was not in issue, nor were the facts concerning the accident and Trude's injuries in dispute. Therefore, the evidence which Equitable sought to admit not only had no bearing on Trude's reputation for veracity or truthfulness, but was also irrelevant. Furthermore, the record does not indicate that Equitable was prejudiced by the trial court's evidentiary ruling or that the verdict would have differed had Equitable been permitted to present evidence of Trude's lifestyle. Accordingly, this claim is meritless.

Finally, Equitable contends that the trial court erred in its computation of delay damages. In this case, the jury's verdict rendered all defendants jointly and severally liable to Trude for the amount of $4,300,000. However, because Trude had executed a joint tortfeasor release with Donati's prior to trial, and because Donati's was held to be 49% responsible for

Trude's damages, the joint and several liability of Equitable and Martin was reduced to 51% of the total verdict, or $2,193,000. The trial court molded the verdict accordingly, and then assessed delay damages in the amount of $333,336 against the non-settling defendants, jointly and severally.

Equitable contends, however, that it is liable for delay damages only on the amount of its pro rata share portion of the total verdict. Since the jury found that 11% of the causal negligence was attributable to Equitable, Equitable's pro rata share of the total verdict would be 11% of $4,300,000, or $473,000. Therefore, Equitable argues, the trial court should have calculated delay damages based upon the amount of $473,000, Equitable's proportionate share of the verdict.

In *Tindal v. Southeastern Pennsylvania Transportation Authority*, 385 Pa.Super. 94, 560 A.2d 183 (1989) (en banc), the Superior Court considered the issue of whether delay damages should be jointly and severally allocable against all liable defendants or whether delay damages should be apportioned only against a particular defendant's portion of liability. In *Tindal*, there were three defendants. Prior to trial, one of the defendants made a settlement offer to the plaintiff pursuant to Pa.R.C.P. No. 238(b)(1). Following trial, a verdict was returned in favor of the plaintiffs. The defendant who had made the offer of settlement was determined to be 70% negligent and the other two non-settling defendants were determined to be 30% negligent. The two non-settling defendants contended that they should not be jointly and severally liable on the total amount of delay damages, as they would be on the jury verdict, but rather that their liability should be limited to their corresponding liability on the verdict (i.e., 30%). The court held that

Liability normally follows verdict. Therefore, appellants are jointly and severally responsible for the entire amount of delay damages because they are jointly and severally liable for the entire amount of the verdict. This result logically obtains from the new Rule which, while labelled "delay damages," is really in the nature of prejudgment interest to be added to compensatory damages awarded at

636

verdict. Moreover, the express language of Rule 238 requires that damages for delay "become part of the verdict, decision or award." Pa.R.C.P. 238(a)(1).

*Id.,* 385 Pa.Super. at 105, 560 A.2d at 189.

Therefore, in this case, Equitable is jointly and severally liable for the total amount of delay damages assessed by the trial court, and the order entering judgment in favor of Trude is affirmed.

Order affirmed.