## Stillwaggon v. Gettysburg Hospital

C.P. of Adams County, no. 91-S-967.

*Neil J. Rovner Jr.,* for plaintiffs.
*Evan Black,* for defendant.

SPICER, *P.J.*, August 11, 1997—For purposes of this opinion, when we refer to plaintiff, we mean Kenna Dee Stillwaggon. On March 21, 1997, a jury awarded plaintiff $1,253,128.16 after finding Gettysburg Hospital negligent, while exonerating Dr. Leah Maitland. Post-verdict motions have been filed and are still pending. Presently, we deal with plaintiff's motion for delay damages. She claims $450,995.78, to cover the period between November 14, 1991, and the date of the verdict. Defendant argues that it should not be responsible for damages this entire period, because some of the delay

is attributable to plaintiff. Both case law, *Costa v. Lauderdale Beach Hotel,* 534 Pa. 154, 626 A.2d 566 (1993), and Pa.R.C.P. 238(2) support the principle advanced by defendant. However, its application to the case at bar is not easily determined.

The rule provides that delay damages shall be added in civil cases involving bodily injury, death or property damage, when the verdict exceeds 125 percent of the amount of any written offer made prior to trial. Although the rule requires a written offer, one made in open court and made a part of the record will suffice. *Arthur v. Kuchar,* 546 Pa. 12, 682 A.2d 1250 (1996). It is said that delay damages are not intended to punish defendants, but to reduce court congestion and to encourage settlement of meritorious claims. *Id.*

Supreme Court has said the following with respect to the rule's interpretation:

"When called upon to interpret a rule of procedure, we are guided by the Rules of Construction which are contained in the Pennsylvania Rules of Civil Procedure. In relevant part they provide that: 'Words and phrases shall be construed according to rules of grammar and according to their common and approved usage . . . .' Pa.R.C.P. 103; that '[T]he object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court' and that '[E]very rules shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter is not to be disregarded under the pretext of pursuing its spirit.' Pa.R.C.P. 127(a)(b). Moreover, a fundamental tenet of interpretation is that the rules 'shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they

are applicable . . . .' Pa.R.C.P. 126." *Woods v. PennDOT,* 531 Pa. 295, 298-99, 612 A.2d 970, 971 (1992).

"Shall" generally imposes a mandatory duty. *Grove North America v. Arrow Lift,* 421 Pa. Super. 12, 617 A.2d 369 (1992).

Some appellate decisions may emphasize "speedy," perhaps rather than "just." For example, in *Woods, supra,* the Commonwealth was required to pay delay damages of $622,387, based upon the verdict, despite its statutory cap of liability being $250,000. In this vein, Superior Court held a defendant who was 11 percent negligent accountable for delay damages on an entire verdict, on the theory the defendant was jointly and severally liable for the total amount of damages awarded. *Trude v. Martin,* 442 Pa. Super. 614, 660 A.2d 626 (1995), *allowance of appeal granted,* 543 Pa. 401, 672 A.2d 279 (1996).

Language indicates that the rule is intended to benefit a successful plaintiff: "Delay damages do not penalize a defendant that chooses to go to court; they simply do not permit a defendant to profit from holding money that belongs to the plaintiff, by requiring the defendant to compensate the plaintiff for the loss of the use of that money during the time defendant held it."(citations omitted) Even so, additional language from the same opinion returns to the question of court congestion: "Delay damages are incentive to settle and to avoid delay of trial not because defendant faces a penalty if it chooses not to settle, but because the defendant may limit the size of the compensation award by settling the case or by choosing not to engage in dilatory pretrial tactics." *Costa v. Lauderdale Beach Hotel, supra* at 163, 626 A.2d at 570.

It can be argued that settlements are the only means of truly affecting court congestion. It has been this

writer's experience that inactive cases, while having the effect of inflating statistics, are low maintenance. When cases heat up and trial occurs, a great deal of time and attention are required for in limine motions, the actual trial process, and post-verdict motions of one kind or another. Speed of reaching that point makes little difference.

Still, Supreme Court language requires us to consider both approaches. Since defendant engaged in no dilatory tactics, our inquiry focuses on plaintiff's inaction. As commentary to the rule points out, *infra,* the key is delay, not a balancing of equities.

It would be easier to base our order on reimbursement. Under this approach, any plaintiff deprived of his or her money should be entitled to the cash and a handsome return for the time defendant withheld it. One could argue that responsibility for delay is irrelevant. It can always be said that defendant should have acted to ensure that trial occurred speedily. We know, for example, even when defendant is not at fault, and things beyond its control account for delay, delay damages are payable unless plaintiff is at fault. *Schrock v. Albert Einstein Medical Center*, 527 Pa. 191, 589 A.2d 1103 (1991).

It is clear, in this context, that we must reject defendant's argument that it was precluded from offering settlement by the absence of a demand. The rule refers to procedural fault, not that occasioned by an unrealistic, or no demand. *Costa, supra.*

Plaintiff argues that defendant has shown no fault ascribable to her. Even though she clearly pursued the case in lackadaisical fashion, she contends that defendant could have availed itself of other remedies. She calls to our attention the following explanatory comment to the rule:

"With respect to delay of the trial, not every procedural delay is relevant to the issue of delay damages, but only such occurrences as actually cause delay of the trial. For example, failure by the plaintiff to answer interrogatories within 30 days should not affect the award of damages for delay unless the trial was delayed as a result."

The comment goes on to explain that other remedies exist for noncompliance with discovery rules.

The commentary might suggest that we focus on defendant's conduct, not on what plaintiff did or didn't do.

Interestingly, a mirror image and similar language appear in discussions concerning motions for non pros and dismissal under Pa.R.J.A. 1901. There, the onus is placed on plaintiff to explain delay. Two years of inactivity may entitle a defendant to a dismissal. When such a motion is filed, plaintiff is required to prove compelling reasons beyond plaintiff's control to account for delay. Many times, delay attendant on discovery, settlement negotiations and/or financial considerations will not qualify. *Penn Piping Inc. v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992); *Chase v. National Fuel Gas Corp.,* 692 A.2d 155 (Pa. Super. 1997).

We think that the two areas are sufficiently analogous that non pros cases are relevant in defining fault for purposes of Rule 238. The goal in both is to alleviate court congestion.

Plaintiff, however, argues that we should not consider inactivity, because the question of a non pros has not been litigated. On the other hand, defendant stoutly maintains that plaintiff should not be allowed to profit from dilatory conduct obvious from the record.

Defendant's failure to request dismissal must be viewed in two respects. The first concerns waiver. A party may not take his chances on a verdict, remain silent and then later complain. *Takes v. Metropolitan Edison Co.*, 440 Pa. Super. 101, 655 A.2d 138 (1995). The second is whether the record itself, in the absence of a hearing, justifies an adjustment in delay damages.

We begin by examining the record to determine if fault can be attributed to plaintiff and whether defendant has waived its right to complain.

The record indicates that plaintiff commenced this action by a writ of summons on November 13, 1991. Rule 238(2)(ii) establishes this as the focal date, although the date the complaint is filed governs actions prior to August 1, 1989. By the time the complaint was filed, June 8, 1992, the date from which delay damages were reckoned was rapidly approaching. We do not know what defendant could have done to speed the process, but note that plaintiff sought and obtained court approval for an extension of time in which to file a complaint. The reason given was necessity of discovery in aid of pleading.

Several depositions were taken thereafter, the last occurring January 15, 1993. At that time, plaintiff said she was in the midst of a divorce and wanted to finalize it before proceeding with her claim. The record indicates that this was the last deposition pursued by defendant.

On January 27, 1993, defense counsel requested expert witness reports.

The case was placed on an annual list for dismissal under Pa.R.J.A 1901 and scheduled for court consideration for September 18, 1995. On August 7, 1995, plaintiff's counsel wrote the court, said the case was still active and requested that it be removed from the purge list. Judge John D. Kuhn entered an order August

9, 1995, extending the case on active status. We might say that this was normal practice in this county. We try to avoid lengthy hearings oriented toward saving the court's time. At any rate, defendant was not given an opportunity to come forward and be heard.

On September 25, 1995, defendant moved to compel plaintiff to provide her experts' reports. Plaintiff praeciped the case for trial on June 20, 1996. By letter dated July 12, 1996, plaintiff's counsel advised defendant, "Mrs. Stillwaggon was involved in a domestic matter precipitated by her injuries and medical problems, but is now ready to pursue this matter."

This court scheduled a hearing on the issue of delay damages, but counsel appeared and represented that all issues could be resolved by the record.

Two things are quite clear. Plaintiff delayed pursuing this case to trial, and defendant acquiesced. However, there is no hint that defendant was at fault for the delay, or misled plaintiff. The issue really becomes whether plaintiff should be allowed to profit for a period in which nothing happened.

We believe that Rule 238's determination of fault allows us to consider principles applicable to non pros and dismissal of inactive cases, and which reflect the same policy considerations as Rule 238. Although, as indicated earlier, we should take pains to avoid speaking of balancing faults, we do not think it just to penalize a tolerant defendant and reward a dilatory plaintiff.

We think the record clearly would have justified dismissal because of delay of over two years. Plaintiff did not describe a cognizable reason for such delay. This being true, we find procedural fault on her.

We also hold that defendant did not waive the issue by waiting until delay damages were actually litigated.

We focus on plaintiff's lack of response to request for disclosure of expert reports. Our approach is justified by technical application of the rule.

Plaintiff's dereliction was procedural, it persisted well beyond 30 days and it certainly delayed trial.

Although there may be strong reasons for denying plaintiff delay damages for a longer period, we confine our order to the period beginning February 27, 1993, which is 30 days after reports were requested, to June 20, 1996, when the last such report was provided.

Accordingly, the attached order is entered.

## ORDER

And now August 11, 1997, delay damages in the sum of $169,953.61 are awarded plaintiff and the verdict is molded to $1,423,081.77.