## Fatherly v. Barber's Hall

*Gordon Gelfond,* for plaintiff.
*Isaac H. Green Jr.,* for defendants.

DYCH, *J.,* October 10, 2008—On February 17, 2008, a jury rendered a verdict for the plaintiff and awarded him $400,000. On June 19, 2008, I denied defendants' post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and entered judgment. Defendants take this timely appeal.

## MATTERS COMPLAINED OF ON APPEAL

Defendants contend that I erred in denying their motion for judgment n.o.v. because the evidence:

(1) established plaintiff's status as a trespasser or, if he was not a trespasser, he was a business invitee who lost his protected status when he exceeded the scope of his invitation onto the defendants' premises.

(2) failed to establish that the defendants' premises were known for violent acts before the shooting incident from which this case stemmed.

(3) established that defendants did not know that a patron was about to injure the plaintiff, that they took reasonable steps to protect persons lawfully on their premises and exercised reasonable care when they were informed that persons had entered without permission.

(4) failed to establish that the conduct that injured the plaintiff was foreseeable.

## FACTUAL BACKGROUND

At about February 8, 2004, shortly after 1:30 a.m., plaintiff Samuel Nathanial Fatherly suffered a gunshot wound to the back while he was in the defendants' establishment, Barber's Hall. N.T., 02/12/08, at 76-77. Testifying on his behalf were his brother, David Jonathan Fatherly (Brother) and a friend, Kalongi Jones, both of whom were with him on the evening of the incident. *Id.* at 9-10, 63-64, 157. The other trial witnesses, each of whom was present during the shooting, were defendant

Jacob Adams, Barber's Hall's proprietor, Clifford Reynolds, a Barber's Hall employee. Detective Robert Kerwin, who came to the scene after the shooting, also testified. *Id.* at 34-50, 146-50,167, 175-78.

The testimony was that Fatherly, accompanied by his brother and his friend, went to Barber's Hall to socialize and attend a party being thrown by someone named "Fudge." N.T., 02/12/08, at 10, 18-19, 24, 27, 66. They did not have printed invitations, and although Fatherly did not recall being invited, Jones testified that Fudge had extended a verbal invitation. *Id.* at 18, 19, 27, 62, 66. When they arrived, a fire marshal was leaving the premises, announcing that the bar's occupancy limit had been exceeded. *Id.* at 8, 21, 64-66. Nevertheless, the men paid an admission fee and were admitted. Barber's Hall personnel conducted a pat-down search. *Id.* at 11, 20, 68. They were not searched with a wand, although they did observe that a wand was used for female patrons. *Id.* at 118-19. Brother and Fatherly checked their coats, but Jones did not, and there were others in the hall wearing coats. *Id.* at 93-94, 153, 157.

Fatherly moved to the back room on the first floor and began a conversation with a female patron. He saw a flash, heard a shot and dove to the floor. After the first shot, Brother dove under a pool table. *Id.* at 13-14, 76-79.

The establishment consists of several facilities. On the first floor there is a bar open to the general public. In the back there is a ballroom for invitation-only. The second and third floor rooms for private, invitation-only events. N.T., 02/11/08, at 43-45.

Adams' testimony concerning the establishment's security and the sequence of events differed from that of the three young men. He testified that as a matter of routine both men and women were subject to a search with the metal detecting wand, that the men were patted down, and that all patrons were required to check their coats in the coat room. *Id.* at 49-53. On the night in question, after the fire marshal's visit around 11:30, he instructed staff to lock the doors and to let in only patrons with invitations to events on the second floor. *Id.* at 34, 35, 39, 43, 64. The fire marshal had determined that the crowd in the back hall on the first floor exceeded capacity. *Id.* at 34. Adams and Reynolds recounted that sometime after the doors were locked there was a surge while security was either letting someone in or out and that he became aware there were patrons in the first floor back room with coats. *Id.* at 42, 171-74. Adams called 911 and the police arrived about 1:10 a.m. A little later he instructed Reynolds (the DJ) to play the last song after which the bar would shut down. *Id.* at 153-54, 170. Adams did not witness the shootings that occurred immediately thereafter and did not know until later when he saw a police report that three people had been injured. N.T., 02/12/08, at 149-50.

For his part, Reynolds, the DJ, testified that the first floor back room was packed during the two hours prior to the shooting. N.T., 02/11/08, at 169. He took note that there were people wearing coats which, he said, was unusual because Barber's Hall policy required that every patron had to check his or her coat. *Id.* at 174. He said that there had been a surge of people entering the premises sometime after 11:30 p.m. when the fire marshal left.

According to Reynolds, the shooting occurred about 1:40 a.m. at which time he saw flashes and heard shots. *Id.* at 175.

Det. Kerwin said his investigation revealed that three people were shot. *Id.* at 150. He was unaware of the presence of any police at the premises prior to his appearance and he had no knowledge of a surge occurring earlier in the evening. *Id.* at 147, 163.

During the charging conference, defendants' counsel demurred on the ground that the evidence showed that the plaintiff was a trespasser and that defendants owed him no duty of protection. In response, I ruled that there was sufficient evidence to put the matter to the jury. N.T., 02/12/08, at 138-40. Over defendants' objection I charged the jury with the task of determining from the evidence whether the plaintiff was a business visitor or a trespasser and, in so doing, was guided by Pennsylvania Standard Jury Instructions 7.00 (owner or land—duty of care), 7.01A (owner of land—business visitor defined) and 7.01C (owner of land—trespasser defined). N.T., 02/13/08, at 5-6, 72-73. I instructed that if they found that the plaintiff was a trespasser, they need deliberate no further. If, however, they determined that he was a business visitor, they were obliged to proceed to the questions of negligence and causation. Further, I instructed them that a business person "has a duty to use reasonable care to find out if a customer is being harmed or is likely to be harmed by others on the premises and to warn or protect him or her." N.T., 02/12/08, at 74. The verdict sheet was drafted accordingly. N.T., 02/13/08, at 71-73, 74. Upon these instructions, the jury returned a

verdict for the plaintiff, having determined that the plaintiff was a business visitor, that the defendants were negligent and that the negligence was a factual cause of the plaintiff's injuries. N.T., 02/14/08, at 4-5.

## DISCUSSION

Upon consideration of the defendants' motion for judgment n.o.v., this court was obliged to determine whether the facts were such that no two reasonable minds could fail to agree that the verdict was proper. *Trude v. Martin,* 442 Pa. Super. 614, 623, 660 A.2d 626, 630 (1995). The propriety of that determination turns on whether there was sufficient evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference that can be drawn therefrom. *Id.* My decision to deny the defendants' motion may be reversed only if the reviewing court finds an abuse of discretion or error of law that controlled the outcome of the case. *Id.*

Fundamentally, defendants have two complaints. First, they contend that I should not have charged the jury with the task of determining the status of the defendant as a trespasser or a business invitee. Second, they contend that the evidence was insufficient to support a finding that the defendants were on notice of any danger to the plaintiff while he was on their premises.

Preliminarily, I note that the plaintiff's status—whether he was a trespasser or invitee—ordinarily is a question of fact for the jury. *Id.* Defendants' arguments on this point assume a view of the facts favorable to them, a view I am prohibited from accepting on a motion for

judgment n.o.v. *Trude, supra.* Plaintiff and his companions testified that they had a verbal invitation to a birthday party, that they paid entrance fees and were admitted without printed invitations, and that they were permitted to go to the ballroom at the back of the first floor. This is sufficient to support a conclusion that they were business invitees to whom defendants owed a duty of care. The question properly was put to the jury.

On the question of notice, Adams testified that it was his awareness of shootings around the city that prompted the security measures adopted at Barber's Hall. Those measures, according to Adams, included checking patrons' identities, requiring printed invitations, pat-downs, metal detection with a wand, and requiring that everyone check his or her coat. This testimony was sufficient to support the conclusion that defendants were aware of the risk that weapons would be brought onto the premises. There was conflicting testimony about whether (a) the plaintiff, his brother and friend actually were subject to the search that the defendants claimed they normally conducted; (b) if there actually had been a "surge" or if, instead, patrons were admitted regardless whether they had the proper ID or a printed invitation; and (c) whether the defendants acted promptly, properly or at all, in response to the fact that there were patrons on the premises with coats, contrary to the defendants' policies. The jury was free to resolve these conflicts in the plaintiff's favor and to reach the conclusion that even though the defendants were aware of a substantial risk of harm in their establishment, their security measures either were inadequate or were not implemented on the night of

February 8, 2004. On these facts, I find no basis on which to second-guess the jury's determination.

## CONCLUSION

There was sufficient evidence of record to charge the jury with the question whether the plaintiff was a trespasser or a business invitee. Further, the record properly permitted the jury to conclude that the defendants had sufficient notice of the danger that weapons would be used on their premises and that they were negligent in preventing harm to the plaintiff. For these reasons, defendants' appeal should be rejected.