**Adeline RABUTINO, Administratrix of the Estate of William Impagliazzo, Appellant,**

**v.**

**FREEDOM STATE REALTY COMPANY, INC., Pace Management Company, Liberty City Management, Travelodge Hotel, Wells Fargo Guard Services, a Division of Borg Warner Protective Services Corporation, HFS, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued March 27, 2001.

Filed Oct. 15, 2002.

Richard K. Hohn, Philadelphia, for appellant.

E. David Chanin, Philadelphia, for Wells Fargo Guard Services, appellee.

Gaele M. Barthold, Philadelphia, for Freedom State Realty Company, appellee.

Before: STEVENS, MUSMANNO, and TAMILIA, JJ.

1. Consensus is that, at the time he was shot, Impagliazzo was neither intoxicated nor directly involved with the racially-motivated conflict that had developed in Travelodge.

OPINION BY STEVENS, J.:

¶ 1 Adeline Rabutino, ("Rabutino"), mother of the late William Impagliazzo and administratrix of his estate, appeals from the order entered by the Court of Common Pleas of Philadelphia County granting Appellees' motions for summary judgment. On appeal, Rabutino claims that the lower court erred in summarily dismissing her wrongful death and survival action when there existed issues of material fact properly reserved for jury resolution, and further contends that the lower court applied incorrect legal standards on the issues of proprietor and independent contractor liability. We affirm in part and reverse in part.

¶ 2 On January 1, 1997, nineteen year-old William Impagliazzo was shot to death on the fifth floor at South Philadelphia's Travelodge Hotel, owned and operated by Appellees Freedom State Realty Company, Pace Management Company, and Liberty City Management Company, (all of whom are hereinafter referred to as "Freedom Realty"). Mr. Impagliazzo had been among an estimated two hundred partygoers under 21 years old attending beer parties on several floors of the Travelodge when one Jose Nunez culminated racial tension between his group of Hispanic–American youth and a group of Italian–American youth by twice firing his handgun into a crowd where Impagliazzo stood.[1] For his conduct, Nunez was eventually tried and convicted of third degree murder, possessing an instrument of crime, and reckless endangerment.

¶ 3 On November 30, 1998, Rabutino filed the action at bar alleging negligence on the part of, *inter alia*,[2] hotel security

2. The caption's two other named defendants, Travelodge Hotel and HFS, Inc., have been dismissed from the present action by order granting their uncontested motions for sum-

Wells Fargo Guard Services, a Division of Borg Warner Protective Services Corporation ("Wells Fargo") and Freedom Realty for failing to protect Impagliazzo from Nunez' criminal conduct. At the conclusion of discovery, Freedom Realty and Wells Fargo filed Motions for Summary Judgment pursuant to Pa.R.Civ.P. 1035.2, in which they argued that no material issues of fact existed with respect to the proper discharge of their duties, and that the event in question was unforeseeable. Rabutino filed Answers in opposition to Appellees' motions, but, on April 6, 2000, the lower court entered two orders granting Appellees' motions and dismissing Rabutino's action. Rabutino filed two timely appeals—one from each order—to this Court, which consolidated the appeals on July 28, 2000.

■ ¶ 4 On appeal, Rabutino raises the following seven related issues:

   I.   WHERE HOTEL MANAGEMENT IS AWARE OF DRUNKEN, BELIGERENT, ROWDY ACTIVITY IN HALLWAYS OF ITS HOTEL, WHERE ITS SECURITY GUARD HAS LABELED THE SITUATION DANGEROUS, WHERE MANAGEMENT REFUSES TO EVICT THE DRUNKEN ROWDY YOUTHS IN SPITE OF REQUESTS BY SECURITY AND HOTEL EMPLOYEES, DOES THE [HOTEL] MANAGEMENT OWE A DUTY TO ITS GUESTS TO PROTECT THEM FROM HARM WHEN FIGHTS BREAKOUT [SIC] AND A BYSTANDER IN THE HALLWAY IS KILLED AS A RESULT OF THE VIOLENCE?

   II.   UNDER THE FACTS PRESENTED ABOVE, IS THE CAUSAL RELATIONSHIP BETWEEN [HOTEL] MANAGEMENT'S REFUSAL TO CONTROL THE ACTIONS OF THE YOUTHS AND THE SUBSEQUENT VIOLENCE AN ISSUE FOR JURY CONSIDERATION?

   III.   WHERE HOTEL MANAGEMENT IS AWARE OF CRIMINAL ACTIVITY ON ITS PROPERTY INCLUDING NUMEROUS DISTURBANCES IN THE BUILDING, FIGHTS, BURGLARIES, ARMED ROBBERIES, VANDALISM, UNDERAGE DRINKING, WHERE IT HAS BEEN ADVISED TO HIRE ADDITIONAL SECURITY TO PROTECT PATRONS OF THE HOTEL, BUT REFUSED TO DO SO AND WHERE IT IS AWARE OF FIGHTS, UNDERAGE DRINKING, AND ROWDYISM ON THE EVENING OF THE SHOOTING BUT DOES NOT TAKE STEPS TO QUELL THE DISTURBANCES, IS A JURY ENTITLED TO DETERMINE THAT THE [HOTEL] MANAGEMENT HAS BREACHED A DUTY OF CARE TO THE PLAINTIFF TO PROTECT HIM FROM FORESEEABLE HARM?

   IV.   WHERE EXPERTS IN THE AREA OF SECURITY AND HOTEL MANAGEMENT HAVE OPINED THAT MANAGEMENT BREACHED ITS OWN INTERNAL RULES RELATING TO UNDERAGE DRINKING, OVERCROWDING OF ROOMS AND CONGREGATION AND ROWDYISM IN

mary judgment. Rabutino does not challenge the order dismissing these two defendants.

THE HALLWAYS AND THAT SAID BREACH WAS A CAUSE OF THE FIGHTS AND VIOLENCE WHICH ERUPTED, MAY THE CASE BE TAKEN TO THE JURY?

V. WHERE REASONABLE INFERENCES FROM THE EVIDENCE SUGGEST THAT [HOTEL] MANAGEMENT DESTROYED RECORDS PERTAINING TO PRIOR INCIDENTS OF ROWDYISM AND CRIMINAL ACTIVITY IN THE HOTEL MIGHT THE JURY BE PERMITTED, AT TRIAL, TO DRAW A NEGATIVE INFERENCE FROM THE ABSENCE OF RECORDS SO AS TO FIND THAT THE RECORDS WOULD HAVE CONTAINED INFORMATION DAMAGING TO THE HOTEL AND ESTABLISHING THE HOTEL'S KNOWLEDGE OF AN OBLIGATION TO PROVIDE ADDITIONAL SECURITY?

VI. DOES THE FACT THAT A THIRD PARTY'S CONDUCT IS FOUND TO BE CRIMINAL INSULATE HOTEL MANAGEMENT FROM LIABILITY WHERE ITS CONDUCT PLAYED A PART IN BRINGING ABOUT THE HARM?

VII. DID THE COURT ERR IN RULING, AS A MATTER OF LAW, THAT THE WELLS FARGO GUARD COULD NOT HAVE PREVENTED PLAINTIFF'S INJURY BY EXERCISE OF DUE CARE?

Appellant's Brief at xi-xii.[3]

¶ 5 Though many in number, Rabutino's surviving claims coalesce to state, essentially, that she produced evidence during discovery which, when viewed in a light most favorable to herself, presented triable factual issues as to Freedom Realty's negligence under Sections 343 and 344 of Restatement (Second) of Torts. Because we find Rabutino has assembled an evidentiary record sufficient to establish a *prima facie* case of negligence as articulated in Restatement (Second) of Torts § 344, we

---

3. We note that Appellant's brief violates Pennsylvania Rule of Appellate Procedure 2116(a), which provides in pertinent part:

Rule 2116. Statement of Questions Involved

(a) General rule. The *statement of the questions involved* must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.

Pa.R.A.P. 2116(a). It is within this Court's power to quash an appeal for violations of the Rules of Appellate Procedure. *See, Commonwealth v. Stafford*, 749 A.2d 489, 493 (Pa.Super.2000). Here, Appellant's Statement of Questions Presented exceeds 32 lines and is over one page in length. We turn Appellant's attention to the oft-held principle that the effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them. *See Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1380 n. 1 (1995) (quoting, *Unites States v. Hart*, 693 F.2d 286, 287 n. 1 (3d. Cir.1982)). However, because Appellant's brief is not so defective as to preclude effective appellate review, we decline to quash her appeal in its entirety. Nevertheless, we limit our review to issues I through VI, which appear on the first page of Questions Presented.

agree that summary judgment entered against her was error.[4]

¶ 6 When presented with a challenge to an order granting summary judgment, we view the record in the light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Staub v. Toy Factory, Inc.*, 749 A.2d 522 (Pa.Super.2000). Concerning questions of law, our scope of review is plenary. *Id.* We are not bound by a trial court's conclusions of law; instead, we may draw our own inferences and reach our own conclusions. *Id.* In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. See Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact as to a necessary element of the cause of action and the moving party is entitled to relief as a matter of law, summary judgment may be entered. *See* Pa.R.C.P. 1035.2(1).

■ ¶ 7 A proper grant of summary judgment depends upon an evidentiary record that either: 1) shows the material facts are undisputed or 2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to submit to a jury. *See Kenner v. Kappa Alpha Psi Fraternity, Inc.*, 2002 WL 1894997, at *2–*3, 2002 Pa.Super. Lexis 1206, at **7–8 (Pa.Super. June 19, 2002). Only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment. *Id.*, 2002 WL at *3.

¶ 8 In order for liability to be imposed upon a defendant in a negligence action, the plaintiff must establish the following four elements: (1) the existence of a duty or obligation recognized by law; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and, (4) actual loss or damage suffered by the complainant. *T.A. v. Allen*, 447 Pa.Super. 302, 669 A.2d 360 (1995). The basis for the order granting summary judgment was that Rabutino supplied insufficient evidence of both a breach of duty owed Impagliazzo and causation. We, therefore, examine each element in turn.

■ ¶ 9 Generally, there is no duty to control the acts of a third party unless the "defendant stands in some special relationship with either the person whose conduct needs to be controlled or…with the intended victim of the conduct, which gives the intended victim a right to protection." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa.Super.2000). All parties agree that Rabutino established the existence of a special relationship with evidence that Impagliazzo was a business invitee of Appellee Freedom Realty's. *See T.A.*, *supra* (citing Restatement (Second) of Torts, § 314A(2) and (3), which recognize, respectively, the special relationships between innkeepers and guests, and between other possessors of land who hold it open to the public and the members of the public who enter in response to the invitation).

---

4. Rabutino presents a claim that Freedom Realty failed to take reasonable measures to protect business invitee Impagliazzo from the careless and wrongful conduct of third persons on the premises. Particularly suited to her case is Section 344, which, unlike Section 343 and its general focus on the duties of all possessors to discover dangerous conditions of their land, expressly addresses the duties of business owners to protect business invitees from the actions and conduct of third persons on the premises. Accordingly, we limit our review to Rabutino's Section 344 cause of action as the most relevant and authoritative expression of law applicable to the facts of the present case.

¶ 10 It follows, then, that Freedom Realty owed Impagliazzo a duty owed to any business invitee, namely, that it would take reasonable precaution against harmful third party conduct that might be reasonably anticipated. *Id.; See also Moran v. Valley Forge Drive–In Theater, Inc.,* 431 Pa. 432, 246 A.2d 875 (1968) (adopting as Pennsylvania law innkeeper liability expressed in Restatement (Second) of Torts, § 344, *infra*).

> The reason is clear; places to which the general public are invited might indeed anticipate, either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation.

*Feld v. Merriam,* 506 Pa. 383, 391, 485 A.2d 742, 745 (1984).

¶ 11 Alluded to in the above parenthetical, Section 344 of the Restatement (Second) of Torts capsulizes the particular duty at work herein. Section 344 provides as follows:

### § 344. Business Premises Open to Public: Acts of Third Persons or Animals

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344. In limited circumstances, this principle imposes upon a possessor of land the duty to police the premises. The duty to police is articulated in comment f:

> f. Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts § 344. Comment f.

¶ 12 Rabutino's breach of duty argument is grounded in Section 344 and essentially alleges a failure to police adequately. Specifically, Rabutino argues that Freedom Realty breached its duty to respond reasonably to readily apparent drunken and rowdy behavior as it developed that New Year's Eve night so as to prevent foreseeable harm from befalling the group of Travelodge invitees to which Mr. Impagliazzo belonged. Initially, we agree that reasonable responsiveness to presently occurring conduct of third per-

sons likely to cause harm is clearly within the scope of duties imposed on possessors in Section 344.

¶ 13 Furthermore, and contrary to the lower court's opinion, the disputed record of material fact may reasonably support Rabutino's claim that Freedom Realty breached its Section 344 duty. Our review of the record discloses deposition testimony and other evidence that, if taken in a light most favorable to Rabutino as non-movant, identifies how Freedom Realty knowingly provided a haven for hours of extensive underage drinking and ill-behaved reveling on New Year's Eve.

¶ 14 Specifically, deposition testimony described how hundreds of underage invitees—up to two dozen of whom stacked cases of beer on hotel luggage dollies—were permitted entry into the Travelodge. Once inside, the youth crowded several floors of the hotel for many hours of drinking and celebrating that security identified to Freedom Realty as "out of hand" well before the shooting occurred. While Freedom Realty did summon police on the advice of security earlier in the night, once police arrived and advised that the decision to eject unruly invitees would be Freedom Realty's alone, Freedom Realty chose to eject no one. When police left, many youth resumed drinking and disorderly behavior without further response from Freedom Realty until Mr. Impagliazzo was shot.[5]

¶ 15 This forecast of evidence, if believed, would allow a reasonable jury to

5. For example, Charles Sedenger, who worked in the hotel's kitchen, testified that he witnessed the lobby crowded with hundreds of youth who looked to be under 21 years old and who clearly were not registered guests; that they had so much beer they needed dollies to transport it; that security on the premises were "show figures" without authority to act; and that he heard gunshots audible throughout the hotel being fired out of hotel windows prior to the incident in question and that he retrieved several of the bullet casings outside of the hotel. He also described the fearful state of mind of fellow employees and another lodger who refused to go on the fifth floor. N.T. 12/17/99 at 31–33, 40–43, 44–45.

Security Guard Salvatore DeLuca testified that many youth on the fifth floor rebuffed his repeated requests to temper the noise and were generally "out of hand;" that beer cans were strewn in hallways; that he, himself, did not feel "in danger," but repeatedly agreed that the level of unruliness and disobedience escalated as the night progressed; that he reported his observations to Freedom Realty management and asked them to evict the crowd on the fifth floor since he did not have the authority to do so, but management elected not to. N.T. 12/7/99 at 98–103, 131, 140–170, 179.

Alma Butts, an adult New Year's Eve invitee not part of the activities at issue, testified that she was riding in the elevator at approximately 10 p.m. when it opened on the fifth floor. She witnessed what she estimated were one hundred or so youth in their teens or early twenties crowded in the hallway, some streaking in their underwear and screaming, others just sitting in stupors, "groaning and moaning." They appeared "drunk or on pills" to Ms. Butts, and they scared her. N.T. 12/17/99 at 10–12.

Lisa Tomasetti, seventeen years old on the night in question and one of the youth invitees who reserved a fifth floor room with four of her girlfriends, testified that Jose Nunez and his friends came to her room as invited guests. She also testified that she warned security of trouble brewing earlier in the night. "Yes, it was me and Tracy that went up to the security guard. We told him, you know, I think something is going to happen because like [the group of young men of Italian–American descent] were real loud, the kids next door, and like they were just wild. I guess they were drunk or whatever. I knew they were going to start [with her Hispanic male friends] and, yes, they did start." N.T. 12/21/99 at 17. According to Ms. Tomasetti, she first told security before Nunez and his friends even arrived, because the boys next door had already begun calling the girls "bitches" and "whores" upon learning that they had invited Hispanic boys to the party. N.T. 12/21/99 at 19. She, along with other youth deposed, also testified that Travelodge was known to tolerate underage partying,

impute to Freedom Realty actual knowledge of a foreseeable risk of harm that went effectively unchecked.[6] Indeed, reasonable minds could differ as to whether it is a common expectation that an already unruly assembly of underage drinkers, left in large measure to their own devices in a reputedly permissive hotel, would engage in careless or deliberate conduct resulting in injury to themselves or other invitees, including Impagliazzo. *See, e.g., Orner v. Mallick*, 515 Pa. 132, 136, 527 A.2d 521, 523 (1987) (in outlining social host liability, recognizing that "our legislature has made a legislative judgment that persons under twenty-one years of age are incompetent to handle alcohol...") (citation omitted). So, too, may reasonable minds disagree as to whether Freedom Realty failed to address this common expectation with reasonable precaution—such as turning away apparently underage invitees and blocking delivery of considerable quantities of alcohol—or reasonable responsiveness—such as ejecting the underage and out of hand drinkers upon discovering their illegal activities.

¶ 16 Therefore, we find that Rabutino has made a *prima facie* case that Freedom Realty breached a duty owed to Impagliazzo. Accordingly, summary judgment as to that element of her Section 344 cause of action was error.

¶ 17 Our inquiry does not end here, however, as we must determine whether there exists an issue of material fact regarding whether Freedom Realty's purported breach was a legal cause of Mr. Impagliazzo's death. Legal causation is found when a defendant's negligent conduct is a "substantial factor" in bringing about the specific harm incurred. *Trude v. Martin*, 442 Pa.Super. 614, 660 A.2d 626 (1995). Whether a defendant's conduct has been a "substantial factor" in causing plaintiff's harm is ordinarily a question of fact for the jury. *Gravlin v. Fredavid Builders and Developers*, 450 Pa.Super. 655, 677 A.2d 1235, 1238 (1996). The matter may be removed from the jury's consideration only when it is clear that reasonable minds cannot differ on the issue. *Id.*

¶ 18 In denying the sufficiency of Rabutino's offering on causation, Freedom Realty espouses the lower court's opinion that Jose Nunez's violence was unforeseeable—an intervening and superceding malicious act wholly independent to the activities ongoing in the hotel. We disagree.

¶ 19 An "intervening force" is defined as "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of Torts § 441 (1965). A "superceding cause" is defined as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440 (1965).

---

particularly on New Year's Eve. N.T. 12/29/99 at 45–46; See Deposition of Raymond Yacovelli, N.T. 12/6/99 at 8–9.

**6.** Because we find reasonable the conclusion that Freedom Realty could have reasonably anticipated harm flowing from the invitees' conduct standing alone, a finding of foreseeability is not necessarily dependent on a record of past criminal activity occurring at or near Travelodge. Nevertheless, Travelodge's alleged laissez faire reputation coupled with an extensive record of reported crimes at the locale during the previous twelve months—170 total calls including 43 disorderly crowds and fighting, twenty three burglaries, five robberies (including one strong arm), 11 vandalisms, and 2 false imprisonments—also bore on the foreseeability that the illicit environment permitted at the Travelodge would foster careless, reckless, and/or deliberate conduct causing harm to those present.

¶ 20 Among the factors to consider in determining whether a subsequent force is an intervening or superceding cause are whether the force is operating independently of any situation created by the first actor's negligence and whether it is a normal result of that situation. *Trude, supra.* "Even where an intervening act is wrongful it does not become a superceding cause unless, looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable." *Id.* at 632 (quoting *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 253, 465 A.2d 1231, 1237 (1983)); *See also* Restatement (Second) of Torts § 435, Foreseeability of Harm or Manner of its Occurrence.

¶ 21 Here, though Nunez's wrongful act constituted an intervening force, a jury, looking back to the circumstances of the evening, may reasonably determine that it was not so extraordinary or unforeseeable so as to have been a superceding cause terminating the liability of Freedom Realty. Undoubtedly, the degree of violence resorted to by Nunez is shocking. Nonetheless, we must be mindful that the peculiar way in which an injury may result is not material so long as there was a foreseeable probability of injury to one within the ambit of danger. *Id.* at 633, 660 A.2d 626. "If [an] actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." *Id.* (quoting *Ford v. Jeffries,* 474 Pa. 588, 596, 379 A.2d 111, 114 (1977)).

¶ 22 That Freedom Realty could not have foreseen which individual would initiate violence, the precise manner the violence would take, and the extent of harm inflicted is, therefore, of no moment to our review. Instead, it would be sufficient for Rabutino to withstand summary judgment by producing evidence that Freedom Realty perpetuated an atmosphere where it was foreseeable that a harmful confrontation involving one or more of the unruly groups in the crowded hallways could have arisen. *See Glass v. Freeman,* 430 Pa. 21, 240 A.2d 825 (1968) (denying superceding cause defense to a § 344 claim where it was the defendant's negligence that created the possibility of the third person's conduct in the first place).

¶ 23 Again, viewed in a light most favorable to Rabutino, the testimony was that Nunez and his group entered the Travelodge early morning and began talking to several girls they knew on the fifth floor. A group of young men, partying for some time and already openly agitated at the prospect of Nunez's attendance, noticed Nunez with disapproval and confronted him before a watchful audience. Posturing gave way to epithets, fights broke out, and then shots were fired.

¶ 24 It cannot be said as a matter of law that this confrontation and its resultant harm to a bystander in the crowd were an unforeseeable event superceding Freedom Realty's negligence as the cause of Mr. Impagliazzo's death. Indeed, the confrontation may reasonably be understood to have sprung directly and predictably from the failure to respond adequately to events as they evolved on the Travelodge's fifth floor. We therefore find that Rabutino has sufficiently established the element of causation with evidence that Freedom Realty's purported negligence was a substantial factor in bringing about her son's death. Accordingly, summary judgment entered against her on this element was in error.

¶ 25 Finding Rabutino has made out a *prima facie* case as to all elements of her

negligence claim against Freedom Realty, we find summary judgment in Freedom Realty's favor erroneous. Accordingly, we vacate and remand for further proceedings consistent with this decision.

¶ 26 Order granting summary judgment in favor of Wells Fargo Guard Services, A Division of Borg Warner Protective Services Corporation is affirmed;

¶ 27 Order granting summary judgment in favor of Freedom State Realty Company, Inc., Pace Management Company, and Liberty City Management Company is reversed; Case remanded; Jurisdiction relinquished.