TREASURE LAKE PROPERTY
OWNERS ASSOCIATION,
INC., Appellee,

v.

Dennis L. MEYER and Betty
J. Meyer, Appellants.

Superior Court of Pennsylvania.

Argued May 28, 2003.

Filed Sept. 4, 2003.

Joseph Colavecchi, Clearfield, for appellants.

Michael P. Yeager, Clearfield, for appellee.

Before: ORIE MELVIN, LALLY–GREEN, and BENDER, JJ.

LALLY–GREEN, J.

¶ 1 Appellants, Dennis L. and Betty J. Meyer, appeal from the order entered on November 26, 2002. We affirm.

¶ 2 The factual and procedural history of the case is as follows. Appellants own an interest in real property located in the Cayman Section of the Treasure Lake Subdivision ("Treasure Lake") of Sandy Township, Clearfield County, Pennsylvania. Treasure Lake is a planned recreational/residential development with campsites, a conference center, a golf course, and various amenities. Plaintiff/Appellee Treasure Lake Property Owners Association, Inc., (the "Association") manages Treasure Lake and imposes maintenance fees.

¶ 3 On February 18, 1998, the Association filed a complaint against Appellants, seeking payment of unpaid maintenance fees. The case proceeded to arbitration, where the Association was awarded $5,177.85. Appellants appealed the arbitration award to the Court of Common Pleas. The case proceeded to a non-jury trial based on stipulated facts and proposed conclusions of law. On November 19, 2002, the trial court found in favor of the Association, and dismissed Appellants' appeal from the arbitration award. This appeal followed.[1]

---

1. On November 26, 2002, the Association filed post-trial motions with respect to attorneys' fees. The trial court disposed of this motion on December 9, 2002. Appellants filed their notice of appeal on December 10, 2002. The trial court did not direct Appellants to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P.

¶ 4 Appellants raise eight issues on appeal:

1. May the [Association] impose **PERSONAL (emphasis added)** liability on the owners of the 1/3000th units for the annual assessments in light of the fact that the units are valueless and in effect, cannot be transferred?

2. May the [Association] assert **PERSONAL (emphasis added)** liability on the owners of the UDI Units [2] for the assessments against the owners of the UDI Units even though the assessments are not uniform and are arbitrarily set in different amounts with no logical or legal basis?

3. May the [Association] assert **PERSONAL (emphasis added)** liability on the owners of the UDI Units when the units have no value, no way to be transferred, and the money is being used for the roads, golf courses, boating facilities, and all of the amenities all over Treasure Lake for the benefit of hundreds of homes, the many condominiums and the other purposes of the [Association]?

4. Is there such a privity of contract that the owners of the UDI Units have agreed to **PERSONAL (emphasis added)** liability for the assessments of the [Association]?

5. Does the fact that the [Association] assessments are described as covenants running with the land amount to the [Association] being able to assess **PERSONAL (emphasis added)** liability against the owners of the UDI units?

6. Is there any legal basis for the [Association] to impose **PERSONAL (emphasis added)** liability upon the owners of the UDI units for the annual assessments which are discriminatory in nature and in any event, are being assessed on units that have no value?

7. Is the assessment by the [Association] in the nature of a ground rent and if so, would it impose **PERSONAL (emphasis added)** liability?

8. Is it logical and legal to assume that if the owners of a UDI unit die, transferring title to his or her children, that the children suddenly become **PERSONALLY (emphasis added)** liable for all assessments from that date forward by the [Association]?

Appellants' Brief at 4–6.[3]

¶ 5 Initially, we note that all of Appellants' issues are waived for failure to

---

1925, and the court did not issue a Rule 1925 opinion.

2. A "UDI Unit" is an undivided interest in the Treasure Lake property. Appellants purchased a undivided 1/3000th interest in the property. Each holder of a UDI Unit receives identical benefits.

3. We note with disapproval that Appellants' Statement of Questions Involved violates Pa. R.A.P. 2116 by exceeding one page and 15 lines. Indeed, the Statement extends to three pages. "We turn Appellant's attention to the oft-held principle that the effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them." *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 937 n. 3 (Pa.Super.2002). This Court has the power to quash appeals for violations of the Rules of Appellate Procedure. *Id.* This Court may also choose to address only those issues which appear on the first page of an appellant's Statement of Questions Involved. *Id.* While we choose not to do so in the instant case, we remind Appellants' counsel that he violates the Rules of Appellate Procedure at his clients' peril. *See, id.*

We also note with disapproval that the Association cited and attached to its Brief an

file post-trial motions. Pennsylvania Rule of Civil Procedure 1038.1 provides that for trials based on stipulated facts, "the practice and procedure as far as practicable shall be in accordance with the rules governing a trial without jury." Such rules include the rules governing post-trial motion practice. Rule 1038.1, official note. Post-trial motions shall be filed within 10 days of the filing of the decision in a non-jury trial. Pa.R.C.P. 227.1(c)(2). Grounds for relief which are not specified in post-trial motions are waived on appeal. Pa. R.C.P. 227.1(b)(2); *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491, 496 (2002) (post-trial motions are required after all types of trials). The record reflects that Appellants did not file post-trial motions. Accordingly, all issues are waived on appeal.

¶ 6 We also note the following. Issues which are not supported by citation to appropriate legal authority are waived. *Slappo v. J's Dev. Assocs., Inc.,* 791 A.2d 409, 418 (Pa.Super.2002). In Issues 1–4, Appellants argue that the Association may not collect maintenance fees from Appellants because: (1) the units themselves are valueless, and thus owners have no realistic choice to sell the units in lieu of paying the fees; (2) the fees are assessed in an illogical, non-uniform, and discriminatory manner; (3) the fees are assessed for the benefit of other homeowners and lot owners at Treasure Lake, rather than the UDI holders themselves; and (4) no "privity of contract" exists between the Association

and Appellants, so that the maintenance fees must be assessed only as an *in rem* lien against the land itself, rather than against Appellants personally. Appellants' Brief at 10–19. In Issues 6–8, Appellants argue that the Association may not collect maintenance fees from Appellants because: (6) the Association's sole remedy is to sell the units; (7) the fees are in the nature of a "ground rent," and thus may be assessed only against the land; and (8) heirs to a UDI property have no means of divesting themselves of the property and avoiding the fees. Appellants' Brief at 21–23. In the instant case, Appellants have presented no legal authority for their arguments. Accordingly, these issues are waived.

¶ 7 Even if these issues were not waived, they lack merit. A brief discussion of each issue follows. First, Appellants argue that it is inequitable for the Association to impose personal liability because the units themselves are valueless, and thus owners have no realistic choice to sell the units in lieu of paying the fees.[4] Appellants assert that "in order to impose personal liability on the owners of the UDI units, there must be a positive action by the owners to agree to the annual assessments." Appellants' Brief at 5. Appellants further assert that in the usual case, owners agree to annual assessments by retaining the interest rather than selling it, but Appellants cannot sell their land. *Id.*

¶ 8 In our view, Appellants did agree to annual assessments by signing a

unpublished memorandum of this Court. Superior Court Internal Operating Procedure § 65.37 provides that, except in circumstances related to law of the case, *res judicata,* and collateral estoppel, "an unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding." This Court has not considered the unpublished memorandum in disposing of the instant case.

4. The trial court appears to accept Appellants' expert's factual assessment that there is an oversupply of Treasure Lake interests on the market, and that the value of such interests is a nominal $1.00. Trial Court Opinion, 11/19/2002, at 6. The court also noted that Appellants have been unsuccessful in selling their land. *Id.* Nevertheless, the court noted that according to Appellants' expert, "sales of the Property Interests do in fact occur." *Id.* at 15.

Contract for Deed which clearly provides for the imposition of maintenance fees. *See,* Contract for Deed, Paragraph 10. We note that Appellants have failed to develop a legal argument that the contract is unconscionable. While we sympathize with Appellants' plight, Appellants are essentially asking this Court and the trial court to immunize Appellants from an unfortunate business decision and/or the vagaries of the real estate market. Neither court has such power. Appellants' first claim fails.

■ ¶ 9 Next, Appellants argue that it is inequitable for the Association to charge varying maintenance fees for UDI units when each unit receives identical benefits.[5] Appellants further argue that non-uniform assessments violate the Association's bylaws. After reviewing the bylaws, we conclude that there is no requirement of uniformity. Moreover, as Appellants themselves attest, "Nowhere in the Declaration of Restrictions does it provide that the assessments may not be uniform." Appellants' Brief at 14. In the absence of a contractual provision or bylaws to the contrary, we see no restriction upon the Association's authority to assess rates in a non-uniform manner. Finally, we note that Appellants do receive maintenance services in exchange for their maintenance fee. Appellants' second claim fails.

¶ 10 Third, Appellants argue that it is inequitable for the Association to assess fees because the fees are being used "for the good of the hundreds of homes of Treasure Lake, the golf courses, ski slopes, riding stables, boating facilities, re-

pair of roads, and any other needs of [the Association]." Appellants' Brief at 17. The Association charges all owners a maintenance fee for the maintenance of all Treasure Lake facilities. These facilities benefit all Treasure Lake owners, **including Appellants**. It would appear that the gist of Appellants' third argument is that "this virtually amounts to slavery since the unit itself is worthless and the UDI owner is locked into it since there is no way to get his or her name removed from the title since because of the lack of any market for it." Appellants' Brief at 17–18. This argument is a restatement of Issue I, above, which we have already addressed. Appellants' third claim lacks merit.

■ ¶ 11 In Issue IV, Appellants argue that there is no contractual basis for imposing personal liability against Appellants for unpaid maintenance fees. The record belies this contention. The trial court found as a fact that the parties entered into a Contract for Deed to Real Estate, which provides that the interest conveyed to Appellants is subject to a Declaration of Restrictions and various Supplemental Restrictions, recorded in Clearfield County Books of Deeds. Trial Court Opinion, 11/19/2002, at 2. One of these Supplemental Restrictions provides that "the lien provided for herein [*i.e.,* a lien against the land if the owner fails to pay maintenance fees] may be foreclosed by suit by Declarant in like manner as a mortgage and, in such event, Declarant may be a bidder at the foreclosure sale. Declarant may also pursue any **other remedy against any owner owing money to it that is available by law or equity for the collection**

---

5. The record reflects that the Association's maintenance fees for UDI units are not uniform. The Association uses non-uniform, "baseline" rates derived from their predecessor-in-interest, the Recreation Land Corporation (RLC). The Association does not know how the RLC initially set their fees, but the Association chose to retain the RLC's fee structure upon taking over from RLC. From these baseline rates, the Association has increased their fees in a uniform manner.

of debt." Supplemental Restriction V(D) (emphasis added). The trial court found that this provision entitles the Association to seek unpaid maintenance fees from Appellants personally, rather than foreclosing on the land. Trial Court Opinion, 11/19/2002, at 10. Based on the plain language of the Supplemental Restriction, we agree. Appellants' fourth claim fails.

■ ¶ 12 In Issue 5, Appellants argue that the covenant to pay maintenance fees "runs with the land," and therefore may be assessed only against the land, rather than against Appellants personally. The difference between personal covenants and covenants that run with the land is as follows. A personal covenant binds only the person who made the covenant, and not future successors in title. *See, Logston v. Penndale, Inc.,* 394 Pa.Super. 393, 576 A.2d 59, 61–62 (1990). Covenants that run with the land are personally binding on the current holder, as well as any future successors in title. *Id.; see also, Hartzfeld v. Green Glen Corp.,* 380 Pa.Super. 513, 552 A.2d 306, 309 (1989).

¶ 13 It is clear from the Supplemental Restrictions that the covenant to pay maintenance fees is intended to run with the land. *See,* Supplemental Restrictions, Introductory Recital. The question is not whether the covenants run with the land; rather, the question is whether covenants which run with the land may be assessed **personally** against the current owner.

■ ¶ 14 Appellants cite, and we have found, no authority for the proposition that covenants which run with the land are limited to remedies against the land itself. Rather, the applicable rule is that the intention of the parties to a covenant must be determined from the language of the covenant itself. *Birchwood Lakes Community Asso. v. Comis,* 296 Pa.Super. 77, 442 A.2d 304, 308 (1982). As noted above, the Supplemental Restrictions plainly pro-

vide that the Association may seek unpaid maintenance fees from Appellants personally. This provision is consistent with Pennsylvania law, which provides:

[A]bsent an express agreement prohibiting assessments, when an association of property owners in a private development is referred to in the chain of title and has the authority to regulate each property owner's use of common facilities, inherent in that authority is the ability to impose reasonable assessments on the property owners to fund the maintenance of those facilities.

*Meadow Run & Mountain Lake Park Ass'n v. Berkel,* 409 Pa.Super. 637, 598 A.2d 1024, 1027 (1991), *appeal denied,* 530 Pa. 666, 610 A.2d 46 (1992). In our view, these fees may be assessed on the property owners personally because they are the "beneficial users of the common areas of the development." *See, id.* Appellants' fifth claim fails.

¶ 15 Issue VI is an undeveloped, equity-based, three-sentence reiteration of Issue I, above. This claim lacks merit for the reasons set forth above.

¶ 16 In Issue VII, Appellants argue that the maintenance fee is in the nature of a "ground rent," and therefore the Association cannot impose personal liability. Our sister court, the Commonwealth Court, recently summarized our Supreme Court's interpretation of "ground rent" as follows:

Although now applied differently by modern usage elsewhere, in Pennsylvania law the term "ground rent" has a more precise and different meaning. In Pennsylvania ground rent is a "perpetual rent reserved to himself and his heirs, by the grantor of land in fee-simple, out of the land conveyed. It is in the nature of an emphyteutic rent." *Black's Law Dictionary* (4th ed.1968). Our Supreme Court, in *Pronzato v. Gu-*

*errina,* [400 Pa. 521] 163 A.2d 297 (Pa. 1960), has further defined ground rent as: "an incorporeal hereditament ... an interest in land distinct and separate from the land out of which it issues.... A ground rent is created when the owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service; the grantor has the ground rent estate and the grantee the ownership of the land subject to payment of the ground rent.... A ground rent is assignable.... Such an assignment passes legal title not only to the right of distress, the power to re-enter, etc., but to all the remedies of whatever description which the grantor had against the grantee...." *Id.* 163 A.2d at 298 nn. 1–2 (citations omitted).

*Morgan Signs, Inc. v. DOT,* 723 A.2d 1096, 1096 n. 1 (Pa.Cmwlth.1999), *appeal denied,* 560 Pa. 677, 742 A.2d 173 (1999).

 ¶ 17 Assuming *arguendo* that the maintenance fee is in the nature of a ground rent, it is clear that ground rents may be collected from individuals personally. Pennsylvania Rule of Civil Procedure 1161 provides that "an action **in personam** to recover any amount due on a ground rent shall be in accordance with the rules governing a civil action." Pa. R.C.P. 1161(a) (emphasis added).[6] Appellants' seventh claim fails.[7]

¶ 18 In Issue VIII, Appellants argue that it is "not logical and legal" for Appellants' children to be liable for the maintenance fees upon inheriting the property, if Appellants are unable to sell their interest during their lifetime. We need not ad-

dress this issue, except insofar as to remind Appellants that: (1) they need not devise their interest in the Units to their children; and (2) anyone inheriting the Units may disclaim such an interest. *See,* 20 Pa.C.S.A. § 6103. Appellants' final claim fails.

¶ 19 Order affirmed.

¶ 20 BENDER, J.: concurs in result.

---

6. Ground rents may also be enforced through *in rem* procedures against the land itself. Pa. R.C.P. 1162.

7. We are concerned with the cavalier way in which Appellants' counsel asserts, with no citation to legal authority, that "Pennsylvania Law is clear that ground rents are only col-

lectible from the land itself and form a lien on the land until it is paid." Appellants' Brief at 22. We remind Appellants' counsel that as an officer of the court, he has a duty to refrain from asserting frivolous claims. Pa. Rule of Professional Conduct 3.1.