**Albright v. Lombardo**

*George A. Reihner* and *Frank J. Tunis Jr.,* for petitioners.

*Linda Lombardo,* pro se.

*Michael G. Crotty* and *Joseph Sileo,* for respondent Newton Township.

MINORA, *J.,* March 2, 2010—

## I. INTRODUCTION

This case was commenced by petitioners Richard and Sandra Albright filing an emergency petition for special injunction. This court granted said petition, petitioners' posted a $1,000 bond, and on November 18, 2009 a hearing was held before this court as to whether a preliminary injunction should be issued.

Petitioners and respondent Newton Township[1] by and through their counsel have provided the court with post-

---

1. Respondent Linda Lombardo, pro se, chose to not submit a post-hearing brief to the court.

hearing briefs. We now consider the matter ripe for disposition. With that in mind, we submit the following.

## II. FINDING OF FACT

The findings of facts in this case as determined by the court are supported by the credible, probative and relevant evidence established during the hearing and the submissions of the parties, and accepted as true by the court.

(1) In September of 1990, Newton Township approved final plans for the subdivision of Phase II of the Summit Lake Acres development. N.T. 11/18/09, at p. 10.

(2) The plan was duly recorded and filed of record in the Lackawanna County Recorder of Deeds office on September 13, 1990 at map book 6A, pages 1209 and 1210. N.T. 11/18/09, at pp. 8-12.

(3) Phase II of the development consisted of approximately 42 residential lots for development as single-family dwelling units. Exhibit P-2, Phase II plans.

(4) The approved plan incorporated a note stating "lot number 50B will be combined with lot number 50A." Exhibit P-2, Phase II plans, N.T. 11/18/09, at p. 11.

(5) The approved plan incorporated a note stating the minimum lot size required is 40,000 square feet. Exhibit P-2, Phase II plans.

(6) At the time the plan was prepared, approved and filed, the developers owned lot 50B but the developers did not own lot 50A. N.T. 11/18/09, at p. 62.

(7) At the time the plan was prepared, approved and filed, the developers, as owners of lot 50B, made an unambiguous decision to restrict development on lot 50B. Such unambiguous decision was expressed in two different unambiguous ways. First, the note on the Phase II subdivision plan that "lot number 50B will be combined with lot number 50A", and second the note that the minimum lot size required for the development would be 40,000 s.f.

(8) During Phase I of the Development, lot 50A was sold to a third party. N.T. 11/18/09, at p. 62.

(9) Petitioners relied upon the notes contained in the Phase II subdivision plan, when purchasing lot 51 in Phase II of the development. N.T. 11/18/09, at pp. 12-13.

(10) Due to the notes in the Phase II subdivision plan, petitioners received the benefit of having larger homes and lot sizes in the development.

(11) Phase I and Phase II of the development were developed/constructed at different points of time and have different conditions/restrictions on development. N.T. 11/18/09, at p. 7.

(12) Phase I and Phase II are extremely close in proximity. N.T. 11/18/09, at p. 52.

(13) Petitioners' property is located in Phase II, but directly across the street from petitioner are lots located in Phase I. Exhibit P-2, Phase II plans.

(14) Respondent Lombardo purchased lot 50B in the spring of 2009, prior to which it was under the ownership

of the developer of the development. N.T. 11/18/09, at p. 62.

(15) The deed which conveyed lot 50B to respondent Lombardo contained/referenced the recording of the Phase II subdivision plan. April 19, 2009 deed attached to respondent Newton Township's proposed findings of fact, conclusions of law and legal argument.

(16) Lot 50B is approximately one-half acre, which is less than 40,000 square feet. N.T. 11/18/09, at pp. 34-35.

(17) Neither lots 50A nor 50B meet the minimum lot size of 40,000 s.f. The combined square footage of lots 50A and 50B is 45,071.95 s.f. N.T. 11/18/09, at p. 12.

(18) On December 5, 2007, the township board of supervisors rendered a decision finding lot 50B was "grandfathered" in under the prior ordinances, and could be built on as a one-half acre lot. N.T. 11/18/09, at p. 22.

(19) The township sent a letter dated March 12, 2008, notifying respondent Lombardo of their decision finding lot 50B as a buildable one-half acre lot. N.T. 11/18/09, at p. 23.

(20) In reliance upon the March 12, 2008 letter respondent Lombardo purchased lot 50B, and was issued a building permit on November 9, 2009 to construct a home on lot 50B. N.T. 11/18/09, at p. 37.

(21) Once petitioners observed construction activity on lot 50B, they initiated this equity action. N.T. 11/18/09 at p. 30.

## III. LEGAL ISSUES

Respondent Newton Township raises four defenses to petitioners' request for injunctive relief. These are (1) lack of jurisdiction by this court because petitioners failed to appeal the issuance of the building permit to the zoning hearing board, (2) lack of jurisdiction by this court because petitioners failed to appeal the board of supervisors' December 5, 2007 decision, (3) the language contained within the Phase II subdivision plans is insufficient to create a restrictive covenant on lot 50B, and (4) petitioners' emergency petition should be barred by the doctrine of laches.

Respondent Newton Township's challenges to the jurisdiction of this court are in contradiction to Pennsylvania case law. It is their contention that petitioners should have filed an appeal from the board of supervisors' December 5, 2007 decision or appeal the issuance of the building permit to the zoning hearing board. Respondent's arguments are only valid if this court concludes that the notes contained in the Phase II subdivision plan are deemed not to be restrictive covenants running with the land. Landowners may properly invoke the court's equity jurisdiction to enforce restrictive covenants. *Perrige v. Horning,* 440 Pa. Super. 31, 39, 654 A.2d 1183, 1186-87 (1995) (landowners could enforce by injunction certain unambiguous notes in a subdivision plan).

Further, if we were to accept respondent Newton Township's allegations that petitioners should have appealed the board of supervisor's December 5, 2007 decision and the issuance of the building permit, then we

must also accept the position that the original developers of the development should have appealed the original approval by the township of the Phase II plan with the two unambiguous conditions noted on the map. No appeal of the original approval of the development was taken, and thus the original developers would have waived their right to appeal.[2] This failure to appeal the two original unambiguous conditions moots the December 5, 2007 decision of the township's board of supervisors and their argument removing jurisdiction of this case from the court.

Therefore, this issue was properly brought before this court and this court has subject matter jurisdiction over the determination of what these unambiguous notes legally mean. This court must determine whether or not the conditions/notes contained in the Phase II subdivision plan are restrictive covenants running with the land, and if they are restrictive covenants then whether an injunction should he issued to enforce said covenants.

Respondent Newton Township's assertion of the defense of laches is also without merit. It is the opinion of this court that until such time as respondent Linda Lombardo began the process of building a home on lot 50B, petitioners' awareness of their need for equitable relief or an injunction did not arise. As petitioners' promptly

---

2. "It is well-established that a municipality may attach conditions to a subdivision approval, so long as the applicant accepts the conditions. (citation omitted) It is equally well-established that acceptance of conditions imposed on a subdivision constitutes a waiver of future challenges to those conditions." *In re Busik,* 759 A.2d 417, 421 (Pa. Commw. 2000).

filed this suit once construction began on lot 50B, the defenses of laches is not applicable.[3]

Further, the doctrine of unclean hands could bar respondent Newton Township from prevailing on the defense of laches. A party seeking equitable relief must have clean hands; any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is a sufficient cause for closing the doors of a court of equity to one tainted with inequitableness. *Penn Square General Corporation v. County of Lancaster,* 936 A.2d 158 (Pa. Commw. 2007). Because laches is an equitable remedy, party asserting laches must come before the court with clean hands. *Mrkich v. W.C.A.B. (Allegheny County Children & Youth Services),* 801 A.2d 668 (Pa. Commw. 2002).

Respondent Newton Township has shown no prejudice resulting from the delay, and respondent Lombardo has filed no memorandum asserting the defense of laches. Because prejudice has not been shown by either party, we find that the defense of laches is inapplicable and meritless.

Therefore, the issues before the court are: (1) whether there are restrictive covenants which run with the land,[4] and (2) if there are restrictive covenants which run with

---

3. In order to establish laches, a respondent must establish (1) a delay arising from the complaining party's failure to exercise due diligence, and (2) prejudice to the respondent resulting from the delay. *White v. Township of Upper St. Clair,* 968 A.2d 806 (Pa. Commw. 2009).

4. Lot 50B in the development known as Phase II of the Summit Lake Acres development in Newton Township, Pennsylvania.

the land, whether a preliminary injunction should be granted to enforce the restrictive covenants?

## IV. LEGAL ANAYLSIS

Black's Law Dictionary defines a restrictive covenant as "a private agreement, usually in a deed or lease, that restricts the use or occupancy of real property, especially by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." *Covenant* (8th ed. 2004), see also, *Doylestown Township v. Teeling,* 160 Pa. Commw. 397, 405, 635 A.2d 657, 661 (1993). A covenant running with the land is defined as "a covenant that, because it relates to the land, binds successor grantees indefinitely. The land cannot be conveyed without the covenant." *Black's Law Dictionary, Covenant* (8th ed. 2004); see also, *Doylestown supra.*

A covenant requires a promise found in a conveyance. *Morning Call Inc. v. Bell Atlantic-Pennsylvania Inc.,* 761 A.2d 139, 142 N.5 (Pa. Super. 2000). Covenants that run with the land are personally binding on the current holder, as well as any future successors in title. *Treasure Lake Property Owners Association Inc. v. Meyer,* 832 A.2d 477, 482 (Pa. Super. 2003). No formal or specific technical language is required to set forth a covenant running with the land, nor is it required that the covenant be expressed as such. *Logston v. Penndale Inc.,* 394 Pa. Super. 393, 399, 576 A.2d 59, 61-62 (1990). (citation omitted)

"It is a fundamental rule of contract interpretation that the intention of the parties at the time of contract governs

and that such intent must be ascertained from the entire instrument. This same principle of contract law is equally applicable to the interpretation of restrictive covenants. In order to ascertain the intentions of the parties, restrictive covenants must be construed in light of: (1) their language; (2) the nature of their subject matter; (3) the apparent object or purpose of the parties; and (4) the circumstances or conditions surrounding their execution." *Vernon Township Volunteer Fire Department Inc. v. Connor,* 579 Pa. 364, 374-75, 855 A.2d 873, 879 (2004).(internal citations omitted) Land use restrictions must be strictly construed and will not be expanded by implication. *Buck Hill Falls Company v. Press,* 791 A.2d 392, 397 (Pa. Super. 2002).

Notes in a subdivision plan create an enforceable restrictive covenant limiting lot size. *Ballard v. Heppe,* 403 Pa. Super. 441, 589 A.2d 266 (1991). Conditions contained in plan notes in a recorded subdivision plan are enforceable even if the conditions are not specifically set forth in the deeds conveying the lots created by the subdivision. *Doylestown, supra,* 160 Pa. Commw. at 406, 635 A.2d at 661.

It is the conclusion of this court that the notes[5] on the Phase II subdivision plan are clear and unambiguous. The first note states "lot number 50B will be combined with lot number 50A." This statement is clear in its direction of what will be done, and unambiguous in that it does not attach restrictions or terms on how or when this action must be taken. The second note states all lots will

---

5. "Lot number 50B will be combined with lot number 50A" and all lots will be a minimum of 40,000 s.f.

be a minimum of 40,000 s.f. This too is clear in that it is a short direct statement, and unambiguous because there are no exceptions to the note.

Further, these notes were added to the plan so that the developer could receive final approval of the development from the township. These notes restrict the lot size and mandate two lots be combined. Read together in light of their purpose it is clear that in order for lot 50A or 50B to be developed, they needed to be combined into a single lot. These notes became conditions or prerequisites to final approval of the subdivision plan. "It is well established that a municipality may attach conditions to a subdivision approval, so long as the applicant accepts the conditions." *In re Busik,* 759 A.2d 417, 421 (Pa. Commw. 2000). Because the conditions in the Phase II plan were added to the plan to receive final approval, they relate to the land and were intended to be binding on the current property owner and successors in interest. Therefore, the notes contained in the Phase II subdivision plan are restrictive covenants running with the land.

Since we have concluded that the notes contained in the Phase II subdivision plan are restrictive covenants running with the land we must now determine if a preliminary injunction should be issued.

"In order to establish grounds for a preliminary injunction, the moving party must prove that: (1) the injunction is necessary to prevent immediate and irreparable harm, which cannot be compensated by damages; (2) greater injury would result by refusing it than by granting it; (3) an injunction will restore the parties to the status quo as

12

it existed immediately before the alleged wrongful conduct; (4) the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (5) the [petitioner's] right to relief is clear . . . . For a preliminary injunction to issue, the petitioner must establish every one of these prerequisites." *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth, Department of Community and Economic Development, Office of Open Records,* 981 A.2d 383, 385 (Pa. Commw. 2009). (internal citations omitted)

"An injunction can be an appropriate remedy where real property rights are concerned. These real property rights may take the form of a restrictive covenant or an easement. Restrictive covenants are generally disfavored by the law and may lose their utility through the passage of time, but covenants of recent vintage may be enforced by injunction." *Big Bass Lake Community Association v. Warren,* 950 A.2d 1137, 1145 (Pa. Commw. 2008). (internal citations omitted) It is clear that a deed for land may incorporate by reference the conditions of a subdivision plan, and the plan conditions then become enforceable in equity by the interested deed holder. *Perrige, supra* at 38, 654 A.2d at 1187. Conditions contained in a recorded subdivision plan are enforceable even if the conditions are not specifically set forth in the deeds conveying the lots created by the subdivision. *Id,* see also, *Doylestown, supra* at 405, 635 A.2d at 631. A property owner has the duty to become aware of recorded restrictions in the chain of title and will be bound to such restrictions even absent actual notice. *Vernon Township Volunteer Fire Department, supra* at 375, 855 A.2d at 880.

In *Gey v. Beck*, 390 Pa. Super 317, 568 A.2d 672 (1990), the Superior Court laid out this court's standard of review when deciding to enforce intentional violations of a covenant.

"We conclude that even in a case involving an intentional violation of a covenant, enforcement may not be had unless it will result in a significant benefit to the beneficiary of the covenant. However, the benefit shown must only consist in the benefit that the covenant was originally intended to convey. The party opposing enforcement has the burden of showing that significant benefit no longer exists. Thus, enforcement will appropriately be denied if the party opposing enforcement can prove that, through a change of surrounding neighborhood or for other reasons, enforcement of the covenant will no longer result in the benefit it was originally intended to achieve. Further, as we have already indicated, the fact that the benefit to result from enforcement may be relatively small is irrelevant where the violation was intentional." 390 Pa. Super. at 382, 568 A.2d at 679. (footnote omitted)

In order to discharge the covenant, the burden of proof is on the one seeking release from a covenant, to show that the original purpose of the restriction has been materially altered or destroyed by changed conditions, and that a substantial benefit no longer extends to beneficiaries of the covenant by enforcement of the restriction. *Vernon Township Volunteer Fire Department, supra* at 376, 855 A.2d at 880, see also *Doylestown, supra* at 405, 635 A.2d at 661. If enforcement of a restriction would remove the intentional violation and have the effect of

restoring the benefit, enforcement should be ordered. *Gey, supra* at 384, 568 A.2d at 681.

In the present case we find the violation of the restrictive covenants to be intentional. Both respondents, the township and Linda Lombardo, were aware of the notes in the Phase II subdivision plan, the restrictive covenants. This awareness is confirmed by virtue of their collective efforts to "grandfather" the lot into compliance. The developer of the Phase II subdivision was the person who sold the property to respondent Lombardo, and was also aware of these restrictions. The fact that respondent Lombardo sought relief from the restrictive covenants from the township is further evidence that the parties knew of the restrictive covenants and intentionally attempted to circumvent the covenants. Therefore, the burden of proof is on the respondents to establish that the petitioner no longer receives the intended benefit from the restrictive covenants because of significant changes in the surrounding neighborhood.

After hearing the credible, probative, and relevant evidence at the hearing it is the conclusion of this court that the respondents have not established their burden of proof. Respondent Lombardo was not able to testify as to any significant changes to Phase II of the development. Further, Frances Walters testified as to lot sizes less than 40,000 s.f.; however there was no showing that these lots were in Phase II of the development, or not part of Phase I which had lesser restrictions. Petitioner received a benefit by having minimum lot sizes of 40,000 s.f. and also having lots 50A and 50B combined. Houses built are larger and yet ground coverage is less due to the

larger lot size. There has been no showing that the character of the neighborhood has so changed in the interim that petitioner no longer receives this benefit. As such it is the conclusion of this court that a preliminary injunction should be issued to enforce the restrictive covenants in place in the Phase II subdivision of the Summit Lake Acres development, and bar any development of lots 50A and 50B until their ownership is united or until the two lots are developed as one contiguous lot of 40,000 s.f or more in conformity with the recorded Phase II subdivision plan and the restrictions it contains.

To revisit the necessary elements under Pa.R.C.P. 1531 and at *Wilson supra.* First, the injunction is necessary to prevent immediate and irreparable harm which cannot be compensated by damages. Petitioners have established the unambiguous notes on the recorded subdivision plan are covenants running with the land and therefore are enforceable. Their harm would be a smaller home in a smaller lot than anywhere else in Phase II of the development. This atypical realty in proximity to petitioners devalues their realty.

Second, greater injury would result by refusing the relief than granting it. If respondent Lombardo was allowed to construct this atypical Phase II development then the necessity to commit waste by its removal could present itself. By granting the relief early in the project any waste arguments are minimized.

Third, the granting of the relief requested restores the parties as much as practical to their position status quo ante.

Fourth, the alleged wrong has been satisfactorily proven to be manifest and the relief narrowly tailored to abate it.

Fifth, the petitioner has shown these two plan notes to be unambiguous and clear and has also shown them to be the equivalent of a covenant running with the land. Therefore the petitioner has established that their right to relief is clear.

For preliminary injunctive purposes the petitioner's burden was to establish each and every one of these prerequisites. We are persuaded that the petitioner has succeeded in that fashion, and accordingly we issue the appropriate order which follows. The parties may seek a further hearing on the permanency of this preliminary injunction at their discretion. It is so ordered.

## ORDER

And now, March 2, 2010, a preliminary injunction is issued upon the respondents' and the property known and identified as Lot 50B in the development known as Phase II of Summit Lake Acres in Newton Township, Pennsylvania, enjoining the construction of a house/ dwelling until such time as the ownership is united or until the two lots are developed as one contiguous lot of 40,000 s.f. or more in conformity with the recorded Phase II subdivision plan and the restrictions it contains. These parties may seek a hearing on the permanency of this preliminary injunction at their convenience.